# GRAFTON,

## AUGUST TERM, A. D. 1843.

## HOMER vs. CILLEY.

It is the accompanying possession alone which establishes the authenticity of an ancient deed, and thirty years has been held to be the lowest period in which a deed may be admitted as an ancient deed. Whether twenty years would be sufficient in this State without other proof, *quære?*

If possession for the requisite period is not shown, the deed must be proved in the usual manner.

A copy from the office of the register of deeds is admitted as evidence of a conveyance in the first instance, only in cases where the party producing it claims title through such conveyance by a subsequent transfer to himself. It can be used as evidence to show a title in the adverse party, or a third person, only as secondary evidence, upon an unsuccessful attempt to produce and prove the original.

Under the statute of July 1, 1831, taxes may be assessed upon towns or places actually organized, if no collector is returned, and on places which might organize if they would, but have not done so. Whether they may be, if the town or place has so few inhabitants as to be actually incapable of organization, *quære?*

The sheriff, under the act of 1831, is a collector of taxes in the cases provided for by that act, having the same powers and authority which collectors of towns have; and his powers, like those of collectors, continue until the taxes are collected, notwithstanding the treasurer may have inserted in his warrant a direction for the return of it by a particular day.

By the same statute, the sheriff was required to observe the same directions as collectors of towns are or may from time to time be bound by law to observe in collecting taxes of non-residents. He was bound, therefore, to deliver to the deputy secretary a copy of his list of taxes, in the manner collectors were required to do by the act of July 4, 1829.

Until such list was left, the sheriff could not lawfully advertise and sell, nor any one owner pay the whole tax and call upon the others for a contribution, even if he might do so when the land was lawfully advertised for sale.

ASSUMPSIT, for money paid, laid out and expended to re-

cover of the defendant a portion of the State tax on Dame's Gore, an unincorporated place in this county, for the years 1835, 6, 7, and 8.

The plaintiff offered a deed of the Gore from Theophilus Dame and wife to the plaintiff, dated November 5, 1787, acknowledged the same day, and recorded September 20, 1788, and proved that he had claimed title under the deed, and had sold out portions of the Gore to various individuals. One witness stated that he had acted as the agent of the plaintiff as long as thirteen years ago, and had exercised various acts of ownership under the plaintiff. The deed was admitted as an ancient deed.

The plaintiff also offered an office copy of a deed from the plaintiff to the defendant, for thirty-three acres of land in the Gore, and proved that the defendant was in possession, claiming title, and had been for six or seven years; which was admitted.

The plaintiff proved that the defendant had said that the inhabitants of the Gore had never organized for the election of officers, and that they would not.

The plaintiff offered certified copies of the State treasurer's warrant for the years 1835, 6, 7 and 8, directed to the sheriff of this county, requiring him to collect the tax for those respective years. He also proved the payment of the tax for the years 1835 and 1838, by the plaintiff to the sheriff, under said warrants without sale.

He also proved by the sheriff that for the taxes of 1836 and 1837 the sheriff advertised the Gore for sale, and sold the whole of it to raise the tax for those years. The sheriff's return on each of said warrants, together with the notices affixed, in the Gore and in Plymouth, the nearest half shire town of the county, and his affidavits thereon, showing that the notices were posted up, were introduced in evidence. He also offered three copies of the N. H. Patriot and State Gazette, the State paper, and three copies of the Democratic Republican, a newspaper printed in the county of Grafton, to show due notice of sale in them.

He proved that the plaintiff, after the sale, redeemed the Gore by paying the whole tax for the said years, and costs of the sale, &c.

A witness testified that he made a demand upon the defendant for his proportion of the tax, before the commencement of this suit, and that the defendant refused to pay, and denied his liability and that of the other inhabitants of the Gore to be taxed in any way, or to be liable to pay, on the ground that they had no right of suffrage.　He further testified that he was employed to collect the defendant's proportion by Daniel Sherburne, the agent of the plaintiff for the Gore, who he said had a regular power-of-attorney from the plaintiff, which the witness had seen, and which he knew to be signed in the plaintiff's hand writing;—that the plaintiff had written to him, recognizing his proceedings in this suit, although he did not recollect that he had been written to by the plaintiff in person before the suit was commenced; —that Sherburne had acted as the plaintiff's agent about three years, and had sold land for him, and that the witness had paid the plaintiff money sent to him by Sherburne for lands sold by him.

The sheriff testified that Moses Hadley's, where a notice was posted, is a private dwelling house in said Dame's Gore, and that there is no public place in the Gore;—that the houses are all alike in this respect.

The defendant filed the following exceptions to the testimony, viz. :—

1. The sales by the sheriff were under the treasurer's warrant, dated May 3, 1837, and returnable by the first day of June, 1837, and under another warrant dated April 21, 1838, and returnable by the first day of January, 1839; and the sales were made after the return day of said warrants, to wit, on the 26th day of March, 1839.

2. The sales do not appear to have been made at public auction.

3. There was no evidence that the plaintiff had been in

possession under his deed, or had done any acts prior to thirteen years ago.

4. There was no evidence that the defendant was in possession of the particular land described in the copy of the deed to him, or that he claimed under said deed.

5. No notice had been given to the defendant to produce the original deed from the plaintiff to him, if any such existed.

6. The power-of-attorney to Sherburne was not produced, nor its absence accounted for.

7. The plaintiff alleged that there were 2000 acres in said Gore, and that the defendant owned thirty-three acres in severalty.

8. There was no evidence that any money had been paid by the plaintiff at the request of the defendant, or that he had promised to pay it.

9. There was no notice of payment shewn to the defendant, or demand upon him.

10. There was no evidence that the sheriff left with the deputy secretary a copy of his list of the taxes, committed to him as aforesaid.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Wilcox & Weeks*, for the defendant.    1. The office copy of the deed from the plaintiff to the defendant was clearly inadmissible, no notice having been given to produce the original.    *Pollard* vs. *Melvin, Grafton, July T.*, 1840. There is no evidence that the defendant was in possession of the land described in said deed.

2. The deed from Dame to the plaintiff was not admissible, without proof, as an ancient deed.    To dispense with such proof, the deed must be thirty years old, and possession must have accompanied the deed.    Here no possession was shewn for more than thirteen years, and no possession is shewn till forty years after the date of the deed.    3 *Johns.*

*R.* 292, *Jackson* vs. *Blanshan;* 9 *Johns.* 169; 10 *Johns.* 475.

3. No authority to make a demand is shewn. The person making the supposed demand was employed by the plaintiff's alleged agent, whose authority was in writing; yet this power was not produced nor its absence accounted for.

It also appears that the plaintiff had written to the person making the demand, since the commencement of this suit, recognizing his proceedings; but that letter is not produced nor its absence accounted for.

The sales under the warrants were made after the return day.

They were not advertised at any public place.

There is no evidence that the sheriff left with the deputy secretary a copy of his list of the taxes committed to him as aforesaid.

All the proceedings to enforce the collection of these taxes depend on the statute of July 1, 1831, 2 *N. H. Laws* 26; and unless that law is valid and applicable to this tax, there was no legal claim against either the plaintiff or defendant, and no tax which any body was bound to pay.

That statute enacts, that when any taxes shall be proportioned to any place unincorporated, having so few inhabitants as to be *incapable of choosing town officers,* the treasurer of the State may proceed, &c.

Upon this rests the authority of the treasurer to issue the warrants which were issued in this case, and upon which the alleged payments were made.

The general law (*Laws* 457, 8,) provides that all unincorporated places which are ordered to pay any part of the public taxes, shall have all the powers of towns as to the choice of assessors, selectmen and collectors; and for neglect to choose such officers may be proceeded against by the treasurer as towns may.

The law of 1831 provides for a different case, where a

place unincorporated is taxed, and is at the same time incapable to choose town officers.

Now we say such a tax, if assessed, is unconstitutional and void. The inhabitants of a place so situated cannot under our laws and constitution enjoy the right of suffrage. There is no provision for them to vote elsewhere except where they dwell, and under the direction of town officers chosen by them. 1 *N. H. Laws* 11, 458; and if, from the smallness of their numbers, they are incapable of choosing town officers, they are incapable of exercising the right of suffrage.

Taxation and representation are inseparable. No citizen can be liable to taxation by a legislative body in which he is in no way represented. This principle lies at the foundation of our government.

This position is confirmed, if it needs confirmation, by the opinion of the judges of this court. 4 *N. H. Rep.* 571.

But we say, if the tax was legal, the plaintiff is not at all entitled to recover any portion of the money paid. He paid nothing at our request. We were not obliged to pay the tax, nor could it be collected of us personally. It was not a charge upon our person or our estate generally. It was a lien only on the land. The plaintiff has no power to make this a debt chargeable generally upon us and our property. If, from his position as owner of a portion of the land, he was in danger of suffering loss, he might bid off the land at auction, or employ some one so to do, and hold it for his indemnity. This was his only remedy.

The plaintiff might have caused the secretary to be furnished with minutes of the division, when the tax could have been made against the separate owners.

The plaintiff might have paid his proportion of the tax, or redeemed his part of the land after sale.

By the act of 1831, sheriffs have the same power to collect these taxes which collectors of taxes have with respect to taxes of non-residents, and they are to observe the same

directions as collectors are bound to observe, and may give deeds, which shall be of equal efficacy with deeds of collectors in cases of non-resident taxes. 2 *N. H. Laws* 26.

By section 3, of the act providing for the collection of taxes upon non-residents, (1 *N. H. Laws* 565,) if any more than one person shall be interested in any lot or tract of land, each one may pay his proportion of taxes, according to his interest in the land, and the share of the delinquent only shall be sold.

The act of 1831 establishes quantity and not quality as the rule of division among the several owners.

And by sect. 6, (1 *N. H. Laws* 565,) when two or more persons are interested in any lot or tract of land sold for taxes, each individual may redeem his own part thereof, by paying or tendering his proportion of the taxes and cost for which said land was sold; and the same proportion shall be made according to the number of acres in the lot or tract of land sold.

It is clear, therefore, that as to the taxes for which the land was sold, the plaintiff might redeem his part by paying his proportion of taxes, according to the number of acres owned by him.

That proportion might as well be ascertained then as now.

The course of legislation upon this subject affords an unerring index to the intention of the legislature. The act of February 22, 1794, (*Laws* of 1815, 544,) provides for collecting taxes on such towns or places as are incapable of choosing town officers. It is almost identical in its provisions with the law of 1831. The main difference is this: the act of 1794, as construed in *Cambridge* vs. *Chandler*, 6 *N. H. Rep.* 271, gave the sheriffs the same power in collecting which collectors had by the *then existing* laws; while the act of 1831 gives the powers which from time to time may be conferred on collectors of non-resident taxes. The existing law in 1794 was the act of February 11, 1791, and the provisions of that law for the redemption of estates where

several were interested, were quite imperfect. That act (*Laws of* 1815, 275,) recited, that " whereas it often happens that more than one person is interested in a proprietor's share of land, *such share held in common and undivided,* and one or more owner should pay his share, and some other owner being delinquent should occasion some part of such lands to be sold : Therefore, be it enacted that the lands sold in such cases shall be only the *undivided right* of the delinquent owner or owners."

Now it is apparent that a special provision was deemed necessary to give one of several joint owners undivided and in common a right to redeem his share and prevent a sale, and no provision was made in this act for such a redemption after a sale by one of several owners.

Under the law of 1794 the same rule was applicable to taxes assessed upon unincorporated places, as that act prescribed to sheriffs the same course which collectors were bound to pursue in collecting non-resident taxes. This was found very inconvenient, as such lands were often owned in severalty by individuals living remote from each other, and having no connection with one another.

The act of June 17, 1796, (*Laws of* 1815, 548,) therefore provided expressly with reference to taxes upon unincorporated places, that where such tax was assessed in one sum the sheriff should receive from any owner his proportion of the assessment, if tendered, and cost, if any, according to his interest ; which proportion is to be estimated according to the number of acres owned by him ; and after the sale of the land any owner may redeem in the same way. This law is not yet repealed as to state and county assessments. (*Laws* of 1815, 548, *note.*) This law and the law of February 22, 1794, although published only in the appendix to the edition of 1815, are not repealed unless by implication from the act of 1831. The law of 1831 repeals probably the act of 1794, as it reënacts all its provisions upon that subject, with one modification. But it does not profess

Homer *v.* Cilley.

to touch the case provided for as to redemptions by the act of June 17, 1796.

But we say the provisions of this act of June 17, 1796, are the same with the general law, (1 *N. H. Laws* 565;) and although one is more fully and definitely expressed than the other, yet both give the right to one owner to pay his part before sale, according to his interest or number of acres.

It is probable that the legislature intended to make the same provisions in both cases, as they are so nearly alike, and nothing requires a distinction.

Then comes the general non-resident law of December 10, 1796, (*Laws of* 1815, 266, 267,) providing that where several were interested in a tract of land, each might pay his proportion of the taxes, according to his interest, and the share of the delinquent only shall be sold;—dropping all that was said in the former law about *undivided and common shares.* And the 7th section provides that after sale any one might redeem by paying his part of the taxes, and said proportion shall be made according to the number of acres.

The language of this act of June 17, 1796, will admit of such construction.

Here is one tract of land assessed in one tax. More than one person is interested in that land, and each may pay his proportion of the tax, according to his interest in the land, and the share of the delinquent only may be sold.

By the statute of July 4, 1829, (1 *N. H. Laws* 565,) after a sale where two or more persons are interested in any lot or tract of land sold as aforesaid, every individual may redeem his part thereof by paying or.tendering his proportion of the taxes and costs, and the same proportion shall be made according to the number of acres in the lot or tract of land sold.

Here the legislature have unequivocally provided for the redemption after sale by one owner, where the land is owned in severalty and not in common.

We say it is an irresistible inference that they intended in the 3d section to give the same right to prevent a sale of a person's land by his tendering his proportion.

Again: The law of June 11, 1796, even if it is held to be repealed by the law of 1831, (and clearly it is not repealed unless by that law) still it shows the intention of the legislature that one of several owners in severalty might pay his proportion of the tax, before sale as well as after, and thus exonerate his own share of the land. Such were the express provisions of the law for thirty-five years, and it may well be called to our aid in giving a construction to provisions in the statutes upon analogous subjects in 1796 and in 1828.

The rule of apportionment in this case has been prescribed ever since 1794, and is to be according to the number of acres, without regard to quality.

*Kittredge*, for the plaintiff. We claim contribution of the defendant for money paid for him under a legal liability. The parties are freeholders in Dame's Gore, an unincorporated place. There is a state and county tax yearly assessed upon the Gore; and, the inhabitants refusing to pay it, we have paid it some years to prevent a sale, and other years to redeem the Gore when sold. We were obliged to pay the whole tax, because there was and could be no apportionment. The bare statement of the case carries conviction with it. Besides, the principle of this case is expressly settled in *Webber* vs. *Smith*, 2 *Vernon* 103. That was a case where premises had been leased and the lessee had underlet to 100 subtenants. The lease was forfeited at law, by reason of the nonpayment of rent and neglect to repair. Some of the under-tenants filed a bill to redeem, which the court permit them to do on payment of the whole rent and making the repairs. The court refuse to apportion the rent, &c., on the ground that if the complainants pay the whole rent, they may compel their co-tenants to contrib-

ute.    See, also, 16 *Ves.* 406; 21 *Pick. R.* 261, *Keith* vs.
*Con. Parish in Easton*, where also the principle of this case
is settled in our favor.    Besides, the statute (1 *N. H. Laws*
458, *sect.* 18,) enacts that in cases like this, where a tax is
collected of one of the inhabitants, he shall have contribu-
tion against the rest, and recover double costs of suit.    Our
case is within the spirit if not the letter of that enactment.
Now, are we obliged to make out the correctness of the
sheriff's acts, to entitle us to recover?    As to part, two
years' taxes, there was no sale, so these exceptions cannot
apply to that payment.    But we contend that it is not in-
cumbent upon us in this action to make out that all these
proceedings were correct, any more than it would be incum-
bent upon a surety or joint debtor, who had paid money
on an execution for his principal or co-debtor, to make out
that the proceedings of the suit were all correct.    Will it be
said that we were obliged to run the risk of losing the
whole land, that we must in fact lose it, rather than pay the
tax? for it was impossible for us to tell whether these pro-
ceedings were correct or not till we had contested them.
And then if they turned out to be correct, our land was all
gone.    If we succeeded in the contest, the costs would be
ten times all the tax.    Still we hold there is nothing in the
exceptions.

As to the first.    The return is merely directory to the
officer.    The warrant is good till the tax is collected, like a
warrant of selectmen to a collector.    These warrants are
never renewed, but hold good till the object of them is ac-
complished.    They are not like an execution, renewable
every term of the court.

The second exception is expressly negatived by the case.

As to the third, the contrary appears.    In *Waldron* vs.
*Tuttle*, 4 *N. H. Rep.* 371, it is said that possession must
accompany the deed; but this does not mean actual occupa-
tion, but merely a claim of title and no adverse possession.
The case finds that we had a deed in 1787, had claimed

title under it, and had sold portions of the Gore to various individuals. This is enough. What follows is not matter of limitation, and does not negative what precedes it. There had been agents before him. Then, again, the defendant holds under us, and therefore ought not to dispute our title. Besides, 1 *Dall.* 14, *Thomas' Lessee* vs. *Horlocker*, a deed sixty-three years old was admitted as an ancient deed where possession had not accompanied it. We are not making out a title as against the defendant, where there has been or is an adverse claim.

The fourth exception is negatived by the case.

5. It was not necessary for us to have offered the copy, or show that the defendant had a deed. That he was in possession, claiming title, was enough to render him liable in this action. But the copy was rightfully admitted. The rule is that where the possession of the deed is not in the party wishing to use it, and he has no contest on it, an office copy is sufficient. 5 *N. H. Rep.* 420, *Southerin* vs. *Mendum.* True, it is said that a party may do this who is proving a title; but it can make no difference whether he is proving a title in himself or the opposite party. This is not like the case of *Pollard* vs. *Melvin.* There the plaintiff had made out a title in himself, and the defendant offered an office copy of a deed, to show title in a third person. Both parties were strangers to the deed. Not so here. There, the copy was offered to divest the plaintiff's claim of title— here, to confirm the defendant's own claim and in consonance with it. It must therefore be sufficient. Besides, the very exception goes upon the ground that there was an original. If so, as it was the defendant's deed, the recording must have been by his procurement. He cannot object, therefore, to a copy made by his order, in fact by himself; *qui facit per alium facit per se.* Still, however, this may be; enough was shown without it.

6. As to this objection, it was not necessary to produce the power-of-attorney. When the demand was made upon

the defendant, he did not dispute the authority of the person making it, but distinctly placed his refusal upon his non-liability to pay in any case. The demand, therefore, was good.

7. This exception is not relied on by the defendant.

8. No express request or promise to pay is necessary; and if the doctrine in *Webber* vs. *Smith*, and *Keith* vs. *Con. Parish*, in Easton, already cited, be sustained, a promise was implied.

9. This exception is negatived by the case. Besides, no notice or demand was necessary. It is like the case of one of two co-debtors paying the whole debt.

10. As to this exception, there was no list to leave, and the law does not require impossibilities.

The plaintiff was obliged to pay the whole of the tax. There was no apportionment and could be none.

The statutes to which the other side allude relate to joint tenancy or tenancy in common.

The plaintiff did not own a tract of land with others. He could not pay his proportion. The sheriff could not tell what the plaintiff's proportion was. There is no statute which fully provides for such a case.

PARKER, C. J. The plaintiff founds his right of action against the defendant upon an alleged title in himself to a part of the land in Dame's Gore;—upon a title in the defendant to another portion of land in the same tract;—upon the assessment of certain taxes in several years upon the Gore;—upon his payment of those taxes in two instances before any sale of the land, and upon his redemption of the land in two instances after sale. He alleges that the defendant is also an owner of land in the Gore, and liable by law to contribution, to obtain which he brings this suit.

The plaintiff cannot retain his verdict, for several reasons. He does not make out title in himself. The execution

of the deed upon which he relied was not proved, and cannot be presumed.

It is the accompanying possession alone which establishes the authenticity of an ancient deed. 4 *N. H. Rep.* 371, *Waldron* vs. *Tuttle;* 3 *Johns. R.* 292, 298, *Jackson* vs. *Blanshan, and auth. cited.*

In the case cited 1 *Dall. R.* 14, there was proof of the hand-writing of a witness.

There was no evidence tending to show possession for more than thirteen years. Thirty years has been held to be the lowest period. If twenty might be sufficient by analogy to our statute of limitations, the evidence falls far short of it.

He fails also of showing title in the defendant to a portion of the land in the Gore. The copy he offered was inadmissible, because no notice had been given to the defendant to produce the original. The plaintiff claims no title from the defendant, and the office copy was no better than any other copy. 10 *N. H. Rep.* 554, *Pollard* vs. *Melvin.*

Either of these matters show that a new trial must be had ; but as the proof in these particulars may probably be supplied, we have examined some of the other questions raised in the case.

It is objected that the statute of 1831 provides for the taxation of places having so few inhabitants as to be incapable of choosing town officers, and that it is therefore unconstitutional, because the inhabitants of such places cannot exercise the right of suffrage. The act of July 1, 1831, provides that when any taxes are proportioned to any place unincorporated, having so few inhabitants as to be incapable of choosing town officers, the treasurer shall assess, &c. But the second section provides that the treasurer may always presume that a place is incapable, where no return of a collector is made on or before the last day of December, in each year.

Taxes may be assessed by the treasurer under this statute

on places actually organized, if no collector is returned, and on places which might organize if they would, but have not. Such cases would not come within the principle on which the objection is founded. In order to raise the question, therefore, it should appear that the place is actually incapable of choosing officers ; and as that is not shown here, it is not necessary to examine this objection. The declaration of the defendant proved in the case seems to imply that the inhabitants might organize and exercise the right of suffrage, if they chose so to do.

The treasurer's warrant seems, therefore, to have been lawfully issued.

In the instances in which sales were made under the warrants, they were made after the day on which the warrant was, by the terms of it, to be returned, and an objection is taken to the validity of the proceedings upon this account.

But the sheriff is, by the statute of 1831, a collector of taxes in such cases, having the same power and authority which collectors of towns have ; and, by the general law, the powers of collectors of taxes continue until the taxes in their lists are collected.

The rule applies to cases where the sheriff has a warrant for the collection ; and the direction of the treasurer to make a return of the warrant by a particular day, did not, therefore, terminate the authority to collect the tax. It cannot be considered as having any farther effect than a direction to return the warrant by that time, if it has been executed.

It is farther objected, that there is no evidence that the sheriff left with the deputy secretary a copy of his list of taxes. The answer to this objection, that as the tax was against a single place, and not against divers places and persons, he had no list, and was, therefore, not bound to have any copy, appears to us to be insufficient.

The signification thus given to the term, " list of taxes," is quite too confined.

The statute of 1831 provided that the sheriff " shall have

the same power and authority, with respect to the taxes committed to him to collect, which collectors of towns have or may from time to time by law with respect to the taxes of non-residents; and he shall observe the same directions as collectors of towns are, or may from time to time be, bound by law to observe, in collecting taxes of non-residents," &c.

The statute of July 4, 1829, providing for the collection of taxes on the unimproved lands of non-residents, required every collector of taxes, on or before the eighth day of the next session of the general court, in June, after the assessment of such taxes, to deliver to the deputy secretary a copy of his list of all such taxes, made out and signed by the selectmen, &c. And the deputy secretary was to retain it in his hands for a certain period, and receive such taxes as should be paid. This was for the convenience of the owners, who might reside at a distance from their lands; and although the term "list" ordinarily signifies a roll or catalogue, yet a roll does not always contain a number of names, or several particulars. There can be no doubt that collectors were as much bound to return a copy of the non-resident taxes, where there was only one tract of land taxed as non-resident, as where there were fifty. There was a list of taxes in the first case within the meaning of the statute, as much as in the last, and so in the present case. Although the warrant of the treasurer contains a tax against one place only, his warrant was a list of taxes; and as he was by the statute of 1831 required to observe the same directions that collectors of taxes were required to observe, a copy of it should have been deposited with the deputy secretary, in order that those interested might have had an opportunity to pay their taxes there.

Until this was done the sheriff could not legally advertise and sell; nor until this was done could any one owner lawfully pay the whole tax and call upon others for a contribution.

As this objection will probably dispose of this case, we

have not found it expedient to proceed to the consideration of other points raised in the case.

Whether persons owning in severalty in such cases can redeem their several shares before sale or after ; or whether one who has paid the whole tax, after a sale, in order to redeem his own interest, may have a contribution either under the 18th section of the act of June 28, 1827, or upon general principles of law, we leave for future consideration, if a case should arise involving that question.

I am inclined to think that the 18th section must be construed as authorizing contribution, but the question is one of some difficulty.

*Verdict set aside.*