# MERRIMACK,

## DECEMBER TERM, A. D. 1850.

---

## FORSAITH v. CLARK.

The copy of a charter of a town duly recorded in the town records and properly certified, is admissible in evidence to prove the charter. The general principle is, that wherever documents or books of a public nature would of themselves be evidence, if produced, their contents may be proved by immediate copies, duly verified.

Whether upon the loss of an original charter and the destruction of the original record of the same made by the Secretary of State, a certified copy taken from the Secretary's office, the record of which had been made up from a copy formerly issued and certified from the original, can be received as secondary evidence, *quære?*

By the provincial laws in force in 1733, it was not necessary to a good conveyance of real estate, that the deed should be witnessed. If signed, sealed, acknowledged, and recorded, it was sufficient.

Whether a deed having upon it two names in the usual place of affixing the signatures of witnesses, but having no words of attestation, showing for what purpose the names were affixed, can be received in evidence as a good deed of conveyance, *quære?* It seems that words of attestation are not essential to the validity of a will, and by parity of reasoning, it would seem that they would not be to the validity of a deed.

Where a party relies upon office copies of deeds, and not upon originals, in making out his chain of title, it must appear that the deeds were acknowledged or proved in the manner prescribed by statute in order to entitle them to be recorded, otherwise the copies will not be evidence. But where a copy of a deed from a registry in this State, which had been recorded over a century, purported to have been acknowledged before a justice of the peace, of the State of Massachusetts: *Held,* that nothing appearing to the contrary apart from the deed, the presumption was, that the register of deeds who made the record had sufficient evidence of the official character of the magistrate to entitle the deed to be recorded.

A testator devised "all the residue of his real estate," but without words of inheritance: *held,* that the devise carried a fee.

A devise of all the residue of the testator's estate to his four sons-in-law, (naming

34 *

Forsaith v. Clark.

them,) *or*, to their children by his daughters, is not void for uncertainty; and where two of the sons-in-law conveyed their interest in the premises, and it did not appear that they ever had children: *Held*, that the deeds were valid as against all, who did not show that they had children, and claimed title under them.

The demandant claimed title to the premises in dispute, as child and heir of T. F., who was seized of the premises by virtue of a deed from J. F.: *Held*, that where a party claims by deed direct to himself he must prove the deed, but that the last step in this chain of title was the heirship of the demandant, and that therefore an office copy of the deed from J. F. to T. F. was admissible.

Where a person has not been heard from for more than seven years he is presumed to be dead; and it devolves upon the party asserting the contrary, to make it appear.

WRIT OF ENTRY. The demandant claimed one undivided half of that part of lot No. 51, in the ninth range and fourth division of lots in Chester, laid out to the right of Jonathan Kimball, which now lies in Hookset, bounded, &c.

Under the general issue the demandant offered in evidence a copy of a record of the charter of the town of Chester, from the office of the Secretary of State. The tenant objecting that such copy was inadmissible without proof that the original was lost, the demandant proved, by the town clerk of Chester, that no such document was in the town clerk's office. The tenant objected to this evidence, on the ground that the town clerk's office was not the proper place of deposit for the charter.

The copy had upon it the following certificates: "A true copy, Richard Waldron, Sec'y." "The above copy was entered and recorded the 10th day of March, 1746–7, per Theodore Atkinson, Sec'y;" with a certificate of the present secretary that it is a true copy of the original as recorded in his office. The tenant objected to this evidence because the record appeared to be made from a copy merely. The copy was admitted, subject to the tenant's exceptions.

The Secretary of State testified that there were no original charters in his office, and no other record there of the charter of Chester.

The demandant also offered in evidence a record of the charter of Chester, dated May 8th, 1722, entered in the first volume of the records of the town, and certified by the town clerk. This

was objected to, but was admitted.   He then showed that Jona-
than Kimball was named as one of the grantees in the schedule
of names of the grantees attached to the charter, agreeably to
said copies.   And it appeared by the town records, that a meet-
ing of the grantees was holden March 28th, 1723, and the grant-
ees organized under the charter.

At a meeting, March 27th, 1745, a committee was appointed
to lay out and make a return of a fourth division of sixty acres,
who made their return to a meeting holden January 6th, 1746,
which was accepted by a vote.   The record of this return being
put in evidence contained the following entry:  " No. 51 in
Chester, in the year 1746, in the ninth range, laid out to the
right of Jonathan Kimball, his fourth division of sixty acres,
more or less, bounded, &c."

The demandant then introduced from the Registry of Deeds
of the county of Rockingham, an office copy of a deed from said
Jonathan Kimball to his four sons, Benjamin, Jonathan, Nathan-
iel, and Isaac Kimball, of all his rights, property, and interest
in the township of Chester, in equal shares, &c., dated November
12th, 1733, recorded 9th of February, 1733–4.   Objection was
made that it did not appear that there were any witnesses to the
deed.   The objection was overruled and the deed read.   The
deed was in regular form, and concluded as follows:

"In witness whereof I have hereunto set my hand and seal
this 12th day of November, 1733, and in ye 7th year of ye reign
of our sovereign Lord George ye 2d, King of Great Britain, &c.

Jonathan Kimball.   (Seal.)

Abiel Foster,      ⎱  Essex, *ss.*  Haverhill, November 12th,
.Edward Clark,   ⎰  1733, then Jonathan Kimball acknowledged
                           this instrument to be his free act and deed.

Before me,   Rich'd Saltonstall, Justice Peace.

Recorded according to ye orig'll ye 9th of ⎱ Pr. Jos'h Peirce,
Feb'ry, 1733–4.                                            ⎰      Recorder.

A copy of record.    Attest.   Josiah B. Wiggin, Rd'r."

Copies from the same registry were also produced of a deed
from Jonathan Kimball, Nathaniel Kimball, and Isaac Kimball,
to Benjamin Kimball, dated July 7th, 1737, releasing to him all

their right, &c., in Chester; and of a deed from Benjamin Kimball to James Whitten, dated August 2d, 1737, releasing to him "in his quiet and peaceable possession now being, one half of all after draughts and divisions, to be laid out to the right of Jonathan Kimball." These deeds purported to be acknowledged before a justice of the peace for the county of Essex, in Massachusetts. The tenant objected to the admission of the copies, unless it was shown, that the persons signing as justices were in office as such; but they were admitted.

The demandant further introduced a copy of a deed from James Whitten to John McMurphy, dated April 28th, 1743, granting one undivided half of the common and undivided land, coming to Jonathan Kimball's right in Chester. Also an office copy of the will of John McMurphy, dated February 25th, 1755, and of the probate of the same, dated December 3d, 1755. By this will said McMurphy devised "all the residue of his real estate to be equally divided between John Caldwell, John Tolford, William Tolford, and Matthew Patten, or their children, by his daughters." This will was admitted, subject to the tenant's exceptions.

The demandant then produced office copies of the following papers, to wit: a deed from Matthew Patten to William Tolford, dated August 5th, 1763, of all right to lands in Chester given him by the will of John McMurphy. A deed from William Tolford to Robert Forsaith, dated February 16th, 1781, of all his lands in the town of Chester. The will of Robert Forsaith, dated March 2d, 1810, and of the probate of the same, dated June 19th, 1810, by which he devised to his sons, David, Jonathan, and Tolford, all his out-lands in Chester. A deed from Jonathan Forsaith to Tolford Forsaith, dated May 18th, 1812, of his part of lot No. 51, ninth range, fourth division, laid out to Jonathan Kimball.

William Tolford, a witness introduced by the demandant, testified that he was a relative of Robert Forsaith, and acquainted with his family; that he had eight children, who lived beyond childhood; four sons, Robert, David, Jonathan, and Tolford, and four daughters, Hannah, Esther, Margaret, and Agnes. Esther died before her father; David died unmarried between 1823 and

1825, and Hannah died unmarried not long after David's death. Robert Forsaith left a widow, mother of these children. Tolford Forsaith left Chester, where he had always made his home, before January 1, 1825. The witness received a letter from him dated Tuscaloosa, Alabama, January 1, 1825, which he answered, and afterwards wrote to him, but he received no answer to these letters, and has never heard from him since. Tolford Forsaith had two children only, Esther, the demandant, and Elizabeth, wife of E. T. Glover. Said Glover testified that he had been married to Elizabeth Forsaith eight years, and neither of them had, during that time, heard any thing of or from her father, Tolford Forsaith.

Objection was made that office copies of the deeds, constituting the demandant's title, are inadmissible without first proving the deed under which she claims, namely, the deed from Jonathan Forsaith to Tolford Forsaith.

The witness, William Tolford, then testified, that before the death of David Forsaith, the house in which said Tolford and his family resided was burned, together with most of his furniture.

The exception was overruled and the deeds admitted. William Coult, a witness introduced by the demandant, testified that he was acquainted with said lot No. 51, in the ninth range and fourth division, situated partly in Manchester, but chiefly in Hooksett, and had seen three of the side lines surveyed, and that he had heard the tenant claim the lot but not by any particular number, and that he had been upon the lot with him, and twelve years ago the tenant worked upon the lot. In the summer of 1848 the witness went upon the land with Mr. Stevens, the attorney of the demandant, and E. T. Glover, and showed them the corners, and they declared they entered to take possession of the lot. The demandant came with Glover to the house of the witness, but did not go into the woods. Glover testified that he made said entry at the request of the demandant.

A verdict was taken by consent for the plaintiff for one eleventh part of the premises described in the writ, subject to the opinion of this Court.

. Sawyer & Stevens (with whom was Atherton) for the demandant.

1. It was not necessary for the demandant to introduce the grant to the original proprietors of Chester, or a copy of the record thereof. All that was proposed to be proved on the part of the demandant by the grant or a copy thereof, was proved by the records of the town of Chester, independent of the charter, or may be presumed without the production of the charter. If, however, it was necessary, then the copy from the office of the Secretary of State or of the town-clerk was admissible ; one of those offices being the proper place of deposit of the charter, and the original not being found in either. 1 Greenl. Ev. § 509, p. 620, and § 482, p. 595 ; 1 Stark. Ev. 356 ; Buller, N. P. 228 ; Hoe v. Nathorp, 1 Ld. Raym. 154.

. 2. The objection to the deed from Jonathan Kimball to his four sons, that it was not witnessed, is not founded in fact, as two names are appended to the deed in the place where subscribing witnesses usually affix their signatures ; which names have no connection with, or reference to the deed, unless for that purpose, and which, therefore, must be presumed to have been placed there for the purpose of attestation. But whether these are the names of subscribing witnesses or not, is immaterial, as at the time of the execution of the deed, by the Provincial Statutes of New Hampshire then in force, no other instrument was necessary for the conveyance of real estate than the deed of the grantor acknowledged before a justice of the peace, and recorded at length in the registry of deeds. Prov. Laws of N. H. ed. of 1771, p. 19 ; Act of 13th of Wm. & Mary (1701) § 1, entitled "An Act for recording deeds and conveyances."

3. No proof of the execution of the deeds from Jonathan, Nathaniel, and Isaac Kimball to Benjamin Kimball, or from Benjamin Kimball to Whitten, would have been required if the originals had been used instead of office copies ; they being ancient deeds, and proving themselves ; and the principle extends to the whole of the execution, including the acknowledgment as well as the signing by the grantor. An office copy, when admissible in making out a chain of title, is in all respects to be received as

Forsaith *v.* Clark.

the original. 1 Greenl. Ev. § 21, p. 26, and note 1 to § 144, p. 184 ; 1 Cowen & Hill's Phil. Ev. 477, note 903.

4. By the devise in the will of John McMurphy, an estate of inheritance passed to the four devisees, though no words of inheritance are used in naming them, as " *all the real estate*" of the testator is devised. *Fogg* v. *Clark et al.* 1 N. H. Rep. 163 ; *McAffee* v. *Gilmore*, 4 N. H. Rep. 391 ; Cases cited in 1 Hilliard on Real Property, 614.

5. The deed from Jonathan Forsaith to Tolford Forsaith is not in the legal custody of the plaintiff. Title deeds do not descend with the estate to the heir as in England. In making out a chain of title, office copies may be used, except in case of a deed to the party himself, or to one whom he represents and of whose papers he has the legal custody. The demandant claims under this deed from Jonathan Forsaith, no more than she claims under any other deed in her chain of title. *Fowle* v. *Lovet*, 6 Mass. 394 ; *Sutherne* v. *Mendum*, 5 N. H. Rep. 428 ; *Pollard* v. *Melvin*, 10 N. H. Rep. 554.

6. The absence of Tolford Forsaith, without being heard of for more than seven years, raises the presumption of his death. *Smith* v. *Knowlton*, 11 N. H. Rep. 191 ; 1 Greenl. Ev. § 41, p. 51.

*D. Clark* and *Bellows,* for the tenant.

EASTMAN, J. The demandant, Esther Forsaith, seeks to establish her claim to the premises in dispute as child and heir of Tolford Forsaith. She endeavors to trace her title from the original charter of the town of Chester, which formerly embraced the territory in controversy, down through various channels to her father. The title being unaccompanied by any acts of possession on the part of those from whom the property descends, is a mere legal one ; and its validity, therefore, depends upon the perfectness with which the chain of title is made out. No counter title is put in on the part of the tenant, and no adverse possession attempted to be shown. But the tenant relies upon the failure of the demandant to show a legal right to the premises ;

and, to sustain his position, interposes to the plaintiff's evidence several exceptions which we will consider in their order.

The first exception relates to the competency of the evidence introduced to show the charter of the town of Chester. A copy of the record of said charter, which purports to bear date May 8th, 1722, from the office of the Secretary of State, is offered. On this copy were the following certificates : — "A true copy. Richard Waldron, Secretary. The above copy was entered and recorded the 10th day of March, 1746 – 47, per Theodore Atkinson, Secretary." And the present Secretary of State certifies the same as a true copy of the original as recorded in his office. It is then proved that there are no original charters in the office of the Secretary of State, and no other record there of the charter of Chester. It is also proved that no original charter is to be found in the office of the town-clerk of Chester. Upon these facts the question is raised as to the admissibility of the copy as secondary evidence.

By the laws in force at the time of the issuing of this charter, all grants by the royal authority were required to be of record, and no patent or charter could be rightfully issued until a record of it had been made. The record being made, the charter or patent was then issued to the grantees. The original record of the charter would, therefore, be among the provincial papers, and the charter that was issued would be in the hands of the grantees. Consequently, the proper place to look for the record would be the Secretary's office ; and to find the original charter itself as issued, search should be made among the records and papers of the proprietary, wherever they are properly kept.

It may perhaps be said to be matter of general history, known to all at least who take an interest in such affairs, that in the early grants of townships, both in this province and in that of Massachusetts, the grant of the land and of the franchises of a town were made to the same persons by the same charter, and the powers of the grantees over their land were exercised by them in their character of a town corporation, and not as a proprietary distinct from the town. The very early records of our ancient towns show that the entire management of the business

of the proprietary was conducted in the town meetings until after 1730. The first separate proprietary meeting in Chester is believed to have been held in 1735, and that up to that time the only records of the town, as a municipal corporation and as a proprietary, were kept by the town-clerk. If, however, the proprietary had been distinct from the town, as was the case with the more recent grants, still the proper place of deposit of the records of the proprietary, after the dissolution of that body, was by law the town-clerk's office. No suggestion is made in the exception, that the proprietary of Chester had been in existence for the last half century, nor is any place named as the proper one in which the charter should be kept, but only that the town-clerk's office was not the proper place of deposit for the charter. But we regard the exception as not well founded, since the document, whether viewed as belonging to the town in the first place, or deposited in the town-clerk's office after the dissolution of the proprietary, would properly and rightfully be in the town-clerk's office. The proper place of deposit for the charter, then, has been searched without success. It may, so far, be presumed to be lost, and the foundation laid for secondary evidence.

But it has already been suggested, that before any charter could be rightfully issued it had to be recorded; and hence the propriety of producing a copy from the original record itself in the secretary's office. It appears, however, that no original charters are to be found in his custody and no other record of the charter of Chester than that from which this copy was taken. This in all probability is to be accounted for from the fact, that in May, 1736, the house of Mr. Secretary Waldron, at Portsmouth Plains, was destroyed by fire, and in it most of the records of the Province. 5 N. H. His. Soc. Collections, 22. This may be regarded as matter of public history, affecting the whole people, and therefore a subject which a court judicially takes notice of. 1 Greenl. Ev. § 5; *Commonwealth* v. *Alburger*, 1 Whart. Rep. 469; *Jackson* v. *Martin*, 12 Wend. 328. These records being destroyed we may well presume that the proper authorities had recourse to the best means in their power to replace them, so far as it could be done. And although we can

find no direct evidence of the fact, yet where we ascertain that some of the missing records are supplied, as in this instance, from the authenticated copies which had before been issued, the probability is very strong, that the government required that persons holding charters or authenticated copies of the record of charters, should bring them to the secretary's office to be recorded anew.  The destruction of the original record of the charter being made highly probable and no trace of it being found except from the copy, the foundation is also laid for the introduction of secondary evidence, as well as from the loss of the original charter itself.  And we incline to the opinion, that were it necessary to hold this copy from the secretary's office to be admissible as secondary evidence, it might well be done. The probability that the missing records were supplied by the authority of the government and were to be received and treated as originals ; the length of time that has elapsed since the record was made, and the faith that is given to ancient transactions upon the verity of which no suspicion is thrown, taken in connection with the general principle, that where an instrument is lost, its contents may be proved by any secondary evidence, where the case does not from its nature disclose the existence of other and better evidence, are considerations in favor of its admissibility.  Were it not for the records of Chester, which were subsequently introduced upon the trial, but which have no necessary connection with the records of the Secretary of State, the copy offered would be the best attainable evidence at the present day, and against its accuracy no reasonable presumption could seem to be made.  Mr. Justice *Story*, in his discussion of the principle of the admission of secondary evidence, in *Winn et als.* v. *Patterson*, 9 Peters's Rep. 677, distinctly intimates, that a copy of this description could be received.  In *Stockbridge* v. *West Stockbridge*, 12 Mass. 400, the court say, that " if there be sufficient proof of the loss or destruction of a record, much inferior evidence of its contents may be admitted, and it cannot be doubted that parol evidence is competent to prove the existence and loss of a record."  These remarks were made in respect to the act of incorporation of a town of which

no record could be found. In *Dillingham* v. *Snow*, 5 Mass. 547, it was held, that evidence of reputation was properly admissible to prove the corporate existence of a parish, where no act of incorporation could be proved. And Mr. *Greenleaf* says, that if the record is lost and is ancient, its existence and contents may sometimes be presumed. 1 Greenl. Ev. § 509. See also, as bearing upon this point, the case of *New Boston* v. *Dunbarton*, 12 N. H. Rep. 409.

But it is unnecessary to go more fully into this examination, inasmuch as the record of this charter, entered in the first volume of the records of the town, was competent to prove the fact desired. The town-clerk was a public recording officer, acting under an oath of office, and as such it was his duty to record this charter. The record was thus an official entry, and, upon the loss of the original, a copy of the same was clearly admissible as secondary evidence, if not indeed upon the more general principle of being an official paper. The case of *Winn et als.* v. *Patterson*, above cited, is directly in point; only the facts in that case do not appear to us so strong as in the present one. There, a power of attorney to convey lands in one county in the State of Georgia, was recorded in another, there being no express statute in regard to the matter; a copy of the record was presented, and held admissible. The principle as gathered from the authorities, is this, that wherever documents or books of a public nature would of themselves be evidence, if produced, their contents may be proved by immediate copies duly verified. *Birt* v. *Barlow*, 1 Doug. Rep. 171; *Lynch* v. *Clarke*, 3 Salk. 154; *Saxton* v. *Nimms*, 14 Mass. 320; 1 Gresley Ev. 115; 1 Greenl. Ev. § 484; 1 Phil. Ev. 424; *Jackson* v. *King*, 5 Cowen, 238; *McCarty* v. *Sherman*, 3 Johns. 429; *Walsh* v. *Crawford*, 14 Serg. & Rawle, 440; *Catlett* v. *Pacific Ins. Co.* 1 Wend. 578; *Peck* v. *Farrington*, 9 Wend. 44.

The next exception, is to the deed of Jonathan Kimball, one of the grantees in the charter, to his four sons. The exception is, " that it did not appear that there were any witnesses to the deed." At the left hand side of the deed, below the body of the same, two names appear, not mentioned in the deed, and

apparently having no connection with it, unless it be as witnesses. The usual words of attestation, " signed, sealed, and delivered in presence of," do not appear upon the deed, but the two names are directly under the place where the words of attestation are usually written. The question then arises, whether these words form an essential part of a deed and are necessary to its validity; or whether they are any thing more than a simple indication that the names attached are the witnesses to its execution. Our statute at the present time requires two witnesses to a deed. It makes it an essential requisite to a good and indisputable transfer by virtue of the deed, that it should be witnessed by two or more witnesses. Rev. Stat. ch. 130, § 3. A deed not witnessed may operate as a covenant to stand seized or as a bargain and sale. *French* v. *French*, 3 N. H. Rep. 263; *Pritchard* v. *Brown*, 4 N. H. Rep. 397; *Stone* v. *Ashley*, 13 N. H. Rep. 38; *Underwood* v. *Campbell*, 14 N. H. Rep. 393. So a deed defective in law may still avail in equity. *Wadsworth* v. *Wendell*, 5 Johns. Ch. Rep. 224. But the property cannot pass by deed. *Smith* v. *Chamberlain*, 2 N. H. Rep. 441; *Stone* v. *Ashley et al.* 13 N. H. Rep. 38. And although the deed may have upon it two names, as in this case, yet if the words of attestation are essential as contended by the tenant, the deed is invalid.

We should be slow to break in upon any of the usual and practised forms in so important a matter as the transfer of real estate, but we ought not to be so wedded to forms, however time-honored they may be, as to permit them to prevent substantial justice from being done. The words of attestation form no essential part of the contract between the parties. They partake in no sense of any condition or covenant, and are no part of the words of conveyance; nor are they to be found in any statutory form, so as to be regarded a part of the law, and therefore essential. The fact that they are upon the deed, does not dispense with the necessity of calling the witnesses to prove the deed; and if fictitious names should be placed under them, or the witnesses deny their signatures, the deed fails of being proved. The words then add nothing to the proof. They dispense with

Forsaith *v.* Clark.

no legal requisites to the transfer. If the persons whose names appear upon this deed, in the place indicated, were now living and should be called as witnesses, would they not be permitted to testify, that they saw the grantor sign the deed and that they themselves signed as witnesses to the execution of the same? We apprehend they would; and if so, the presence of the words adds nothing to the validity of the deed. Shall we then decide, that the want of them renders void the deed? Or shall we not rather hold, that they are words of form only, very convenient and proper, but not absolutely necessary to perfect the conveyance? In the case of the attestation of wills it has been held, that though the statute requires the attestation of the witnesses to be in the presence of the testator, yet it need not appear upon the face of the will to have been so done, but it is matter of evidence to be left to a jury. Bull. N. P. 264; *Prics* v. *Smith,* Willes, Rep. 1; 4 Taunt. 217; 1 Phil. Ev. 499; *Jackson* v. *Christman,* 4 Wend. 277. And in regard to deeds, also, the doctrine of Phillips would seem to sustain the views which we have above expressed. 1 Phil. Ev. 499.

But however this may be, the suggestion of the plaintiff's counsel, that no subscribing witnesses were at that time required by the provincial laws then in force, is a perfect answer to this exception. The act for recording deeds and conveyances then in force provides, " that henceforth all deeds or conveyances of any houses or lands within this province, signed and sealed by the party or parties granting the same, having good and lawful right or authority thereto, and acknowledged by such grantor or grantors before a justice of the peace, and recorded at length in the records of this province where such houses and lands do lie, shall be valid to pass the same, without any other act or ceremony in the law whatever." Laws, Ed. of 1771, page 19.

The third exception taken, is to the copies of the deeds from Jonathan Kimball and others to Benjamin Kimball, dated July, 1737, and from Benjamin Kimball to James Whitten, dated August, 1837. These deeds come from the registry of the county of Rockingham, but they purport to have been acknowledged before a justice of the peace of the province of Massachusetts, and the

35 *

objection is taken that they cannot be read, unless it is first shown that the person signing as justice was in office as such. Were the original deeds themselves presented, it would not be necessary as between these parties to show the acknowledgment. The object of the statute of enrolments is to protect subsequent purchasers and creditors. And it is not necessary to the validity of a deed, as against one who shows no title, that it should be either acknowledged or recorded. *Montgomery* v. *Dorion*, 6 N. H. Rep. 250; *Wark* v. *Willan*, 13 N. H. Rep. 389; *Pidge* v. *Tyler*, 4 Mass. 546; *Marshall* v. *Fiske*, 6 Mass. 30. This tenant showing no title, but so far as appears being a mere wrongdoer, is not in a situation to call for proof of the acknowledgement of the deeds, were the originals presented. But the demandant, relying upon the office copies and not upon the originals, it must appear that they were acknowledged, or proved in the manner prescribed by statute, in order to entitle them to be recorded; otherwise the copies cannot be used. *Montgomery* v. *Dorion*, 6 N. H. Rep. 250. The requirement of the statute is, that the deed be acknowledged before a justice of the peace; and if an inspection of the papers here did not show that the acknowledgments were taken before magistrates residing in Massachusetts, no question would arise. Ordinarily, the admission of an office copy, admits all that appears upon it; execution, acknowledgment, and record. And it is well settled in this State, that office copies are proper and competent in making out a chain of title, except, however, where the party to the suit is a party to the deed. *Southerin* v. *Mendum*, 5 N. H. Rep. 248; *Pollard* v. *Melvin*, 10 N. H. Rep. 554; *Loomis et al.* v. *Bedel*, 11 N. H. Rep. 74; *Scanlan* v. *Wright*, 13 Pick. 523; *Woodman* v. *Coolbroth*, 7 Greenl. Rep. 181; *Homer* v. *Cilley*, 14 N. H. Rep. 85.

It is believed to have been the invariable practice in this State, when the official character of an officer resident in an adjoining State has been called in question, to require but slight evidence to substantiate the fact, wherever the official character is not intimately connected with the merits of the subject-matter in controversy. Thus, in the taking of depositions by a justice of the

peace in another State, slight evidence has been deemed sufficient, of the official character of the magistrate.  *Shepherd* v. *Thompson*, 4 N. H. Rep. 213 ; *Steele* v. *Stone et al.* 12 N. H. Rep. 90.  And by the present rule of Court, where oaths are administered or depositions taken abroad to be used in this State, the fact that the person has signed his name in the capacity represented, will be taken as *primâ facie* evidence that he is legally empowered so to act.  It is now more than a century since these deeds were executed and recorded.  The statute then in force made no provision for proving the official character of the magistrate residing out of the State, and taking the acknowledgment.  The register of deeds may have had plenary evidence of the official character of the magistrates at the time he recorded the deeds, and that evidence be now lost.  Every presumption is to be made in favor of the legality of the records, and the regularity of the proceedings, after such a lapse of time.  And until the tenant shall show some right, or color of right to the premises, or throw some stronger suspicion upon the validity of the deeds, than is presented by the facts here, our opinion is, that the exception must be overruled, and the deeds held to have been duly acknowledged and recorded.

The precise ground of exception to the will of John McMurphy is not stated.  By this will, said McMurphy desired "all the residue of his real estate, to be equally divided between John Caldwell, John Tolford, William Tolford, and Matthew Patten, or their children by his daughters."  The will contains no words of inheritance, but that is not necessary to vest a fee.  If the will contain apt words to express the intention of the testator, and to show that a fee was intended to be given, that is sufficient. A devise of all the testator's estate carries a fee.  *Fogg* v. *Clark*, 1 N. H. Rep. 163 ; *McAffee* v. *Gilmore*, 4 N. H. Rep. 391 ; *Leavitt* v. *Wooster*, 14 N. H. Rep. 550.  Upon these authorities, there can be no doubt that a fee passed by the terms used in this will.  The only difficulty that we discover, is the alternative manner in which the devise is expressed.  The use of the word *or*, raises some uncertainty as to the proper construction that should be given to the devise, though we apprehend that it was the intention of the testator to give the property to his four

Forsaith *v.* Clark.

sons-in-law, and in the event of their decease that it should pass to their children, should they leave any. To make the will effective, the word *or* may well enough be construed to mean *and.* Should that be done, the effect would be to give an estate for life to the sons-in-law, with remainder over to their children. *Newman* v. *Nightingale,* 1 Cox, 341; Powell & Jarman on Devises, 225, note.

But there is no evidence in the case, that either of the devisees under· whom the demandant claims, ever had children; and the deeds of Patten and William Tolford convey an estate in fee, only defeasible by those who can establish a claim under such children. For the purposes of this verdict, therefore, the demandant stands well enough upon this branch of the case.

A further exception is taken, that copies of the deeds constituting the demandant's title, are inadmissible till the deed from Jonathan Forsaith to Tolford Forsaith, the demandant's ancestor, shall be proved. This is the last deed offered, and a copy of it is introduced instead of the original.

We have seen in the discussion of this case that office copies are properly admissible in making out a chain of title, except the immediate deed under which the party claims. · The deed directly to himself must be proved. *Pollard* v. *Melvin,* 10 N. H. Rep. 554; *Loomis et al.* v. *Bedel,* 11 N. H. Rep. 74; *Homer* v.· *Cilley,* 14 N. H. Rep. 85. This copy we think admissible upon two grounds. It is not the last step in the plaintiff's chain of title, and hence not objectionable: and if it were the last step, the non-production of the original is accounted for, and it can be admitted as secondary evidence.

The demandant is not a party to this deed. She does not claim as the grantee of Jonathan Forsaith. If she can rightfully hold the premises, it is as heir of Tolford Forsaith. The last link in her chain of title, therefore, is her heirship; and this she proves. But the destruction of the house occupied by Tolford Forsaith, together with most of his furniture, taken in connection with the fact of his departure to parts unknown, is sufficient to raise the presumption of the loss of the deed; or, at least, of the inability of the demandant to produce it. A copy, therefore, would be admissible as secondary evidence.

The last question raised by the case, relates to the death of Tolford Forsaith. But this can no longer be regarded an open question. His absence for more than seven years without being heard from, is presumptive evidence of his death. That presumption being raised it devolves upon the tenant to rebut it. *Smith* v. *Knowlton*, 11 N. H. Rep. 191; *Newman* v. *Jenkins*, 10 Pick. Rep. 515; *Loring* v. *Steinman*, 1 Met. Rep. 204; Matthew's Pre. Ev. 279; 1 Phil. Ev. 197; 1 Greenl. Ev. § 41; *Woods* v. *Woods*, 2 Bay, (S. C.) Rep. 476; *Wambough* v. *Schank*, 1 Penn. Rep. 229; *Doe* v. *Jesson*, 6 East, Rep. 80; *Doe* v. *Deakin*, 4 Barn. & Adol. 434. And numerous other authorities might be added to the same purport.

An examination of the several exceptions to the demandant's right of recovery, has brought us to the conclusion that they cannot be sustained; and that, consequently, there must be

*Judgment on the verdict.*