# COOS,

## JULY TERM, A. D. 1840.

## LOOMIS & a. *vs.* BEDEL.

Where there is a conveyance with a covenant of warranty, and there is in fact a superior title, which is asserted by offering the premises for sale at public auction, and the grantee under the subsequent conveyance yields to the superior title and purchases it; this assertion of title, and purchase, is a sufficient ouster or disturbance to sustain an action on the covenant of warranty, notwithstanding there was no actual dispossession.

And if one of several grantees under the subsequent conveyance makes the purchase, and remains in possession, all may have their action on the covenant.

The existence of a superior title, and the conveyance of it to a third person, without any entry, or any recognition of it by the party holding under the subsequent conveyance, is not a breach of a covenant of warranty.

An assertion of a superior title, by the administrator of one tenant in common, under a license, and a purchase of the interest of the deceased, by the party holding under the subsequent conveyance, will not avail as an ouster or disturbance by a co-tenant.

It is only when a party claims title, through deeds which have been recorded, that he is entitled to use office copies in evidence, without an effort to produce the original.

Where a party conveys all his right, title and interest in certain lands described in the deed, and covenants to warrant and defend the premises against all lawful claims arising under him, the covenant refers to the lands described in the deed, and not to the right and title of the grantor.

Where a grantee with warranty purchases in a paramount title, upon which he has been ousted or disturbed, he cannot recover in damages more than the amount he has paid to extinguish such title, with a compensation for his trouble and expenses.

COVENANT. The first count alleged that the defendant, by his deed of the 11th of July, 1835, conveyed to the plaintiffs twelve twenty-fifths of all that tract of land lying north of the forty-fifth degree of north latitude, on the head

waters of Connecticut river, embracing lake Connecticut, lake Charles and the pond above, which was deeded to the defendant by the St. Francis Indians, and confirmed to him by the claimants under king Philip, by deed bearing date the eleventh of June, 1830, and bounded, &c., containing by estimation 300·000 acres, be the same more or less; reserving all lands occupied and possessed by settlers; with a covenant to warrant and defend said premises against the lawful claims and demands of all persons claiming by, from or under the defendant. And the plaintiffs averred that the defendant had not kept his covenant, inasmuch as on the 23d of June, 1820, he, by his warrantee deed of that date, conveyed to Simeon Eastman and John M. Tillotson one sixth of the tract of land aforesaid, together with 500 acres over and above said one sixth of said tract; which land the plaintiffs averred was and still is a wilderness, and that said Eastman and Tillotson never have been settlers thereon, and that said land granted to them is no part of the reservation aforesaid. And the plaintiffs further averred, that on the 12th of July, 1835, the said Eastman and Tillotson claimed and asserted title to said land, against the plaintiffs, in opposition to and disturbance of the plaintiffs; to which claim the plaintiffs yielded and assented; and so the defendant hath broken his covenant.

The second count alleged that on the 12th of July, 1835, Joshua Marshall, as the legal and rightful representative of said Tillotson, then deceased, entered into possession of said premises, as the representative of said Tillotson, and evicted the plaintiffs therefrom; and so the defendant hath broken his covenant.

The plaintiffs gave in evidence a deed from the defendant to themselves, dated July 11, 1835, whereby the defendant remised, released, and forever quitclaimed all his right, title, interest, claim and demand to twelve twenty-fifths of all that tract of land lying north of latitude forty-five, &c., "reserving, however, all the lands occupied and possessed by set-

tlers, who are to be quieted in their several improvements and possessions. To have and to hold said remised premises, with all the privileges and appurtenances thereto belonging, to them, the said Loomis, Wilson and Stephenson, their heirs and assigns forever." And the defendant covenanted that he would "warrant and defend the said premises to them, the said Loomis, Wilson and Stephenson, their heirs and assigns, against the lawful claims and demands of any person or persons claiming by, from or under me."

They also gave in evidence, to show a breach of the defendant's covenant, a prior deed from the defendant, to Simeon Eastman and John M. Tillotson, dated June 23, 1820, of one sixth of the land conveyed to the plaintiffs, together with 500 acres, and a mill privilege, in addition to said one sixth. The mill privilege was proved to have been occupied by settlers prior to the date of the plaintiffs' deed, and was therefore within the reservation of said deed.

The plaintiffs also offered in evidence a deed from Joshua Marshall, administrator of John M. Tillotson, to William Cutts, dated 12th of September, 1835, conveying said Tillotson's interest in the land, as conveyed by the defendant to Eastman and Tillotson, as aforesaid ; and there was evidence that Benjamin Stephenson, one of the plaintiffs, with six others, purchased the title conveyed by Marshall, as above stated, and that the deed was taken by Cutts for the joint benefit of the purchasers ; and that said land was sold to them at public auction. There was evidence also that Marshall had a license as administrator, for the sale of the interest of Tillotson.

It appeared that Simeon Eastman's interest, in the purchase from the defendant, had been conveyed to John Bacon, but there was no evidence that there had ever been any entry by Eastman, or his grantees.

In order to show the admission of the defendant that he owned but twelve twenty-fifths of the territory, and that the conveyance from the defendant to Eastman and Tillotson

was part of said twelve twenty-fifths, an office copy of a contract between said Bedel and one Jonathan Eastman, dated June 11, 1830, was offered in evidence by the plaintiffs. Also a deed from king Philip to Thomas Ames, Jonathan Eastman, and others, of said land north of the forty-fifth degree of north latitude, as described in the plaintiffs' deed ; said deed from king Philip bearing date June 28, 1796.

The defendant objected to the foregoing evidence—1. That the plaintiffs had produced no sufficient evidence of an eviction ; the said Eastman and Tillotson never having claimed or occupied said lands, and the plaintiffs having yielded to no claim. 2. That if the conveyance from Tillotson's administrator should be considered as an eviction of his interest, there is no competent evidence of an eviction by Simeon Eastman, or his grantees. 3. That the deed from the defendant to Simeon Eastman and John M. Tillotson is void, as being against the laws of the United States, it purporting to convey merely an Indian title. 4. That there is the same objection to the deed from the defendant to the plaintiffs. 5. That the office copy of the contract betwixt the defendant and Jonathan Eastman was incompetent evidence.

The court instructed the jury that there was sufficient evidence of an eviction of that portion of the land conveyed by the defendant to Eastman and Tillotson, and that the proper rule of damages was the value of the land at the time of the eviction.

The jury returned a verdict for the plaintiffs, for the sum of $4483·33, and the defendant moved for a new trial, on account of the admission of improper testimony, and a misdirection to the jury.

*Woods*, for the defendant. A covenant of warranty is a covenant for the possession only, and not the title. To entitle a plaintiff to recover on that covenant, therefore, he must show an actual eviction or ouster by a paramount title. He must show an actual disturbance of his possession, or an

actual dispossession by virtue of such paramount title. 4 *Mass. R.* 408, *Bearce* vs. *Jackson;* 4 *Ditto* 441, *Twombly* vs. *Henley;* 4 *Ditto* 627, *Prescott* vs. *Trueman;* 2 *Ditto* 468, *Marston* vs. *Hobbs;* 17 *Ditto* 213; 10 *Wheat.* 449; 4 *Kent's Com.* 471–479; 2 *Johns. R.* 1, *Greenby* vs. *Wilcocks;* 3 *Johns. R.* 471, *Waldron* vs. *McCarty;* 7 *Johns.* 376, *Kent* vs. *Welch;* 11 *Johns.* 122; 15 *Johns.* 483; 8 *Johns.* 198; 5 *Johns.* 120; 13 *Johns.* 236; 2 *Wend.* 365; 3 *Wend.* 182; 8 *Pick.* 346, *Jenkins* vs. *Hopkins.* The direction of the court was evidently wrong, because it assumes that there was an eviction as to the whole interest conveyed to Eastman and Tillotson, whereas in regard to Eastman's interest it was merely an outstanding title, and no act under it disturbing the plaintiffs. The only acts shewn, to constitute an eviction or ouster as to Tillotson's interest, were a sale by his administrator, not upon the land, but at Lancaster, many miles distant from the land, and a purchase by one of the plaintiffs, jointly with others, of that interest. No entry is shewn by Tillotson, by his administrator, or any person under them. This sale does not constitute an ouster or eviction. The mere fact of the sale by Tillotson's administrator, without any entry by him, or any one under him, cannot be an ouster, nor even a disturbance of the plaintiffs in their possession; and if there were any ground to contend that the buying in of the outstanding title, by the plaintiffs, would be equivalent to an eviction; yet the evidence in this case will not support the present action, for the plaintiffs by their deed were tenants in common; their estates and interests were therefore several; and although for a joint damage they might perhaps join in a personal action, yet here one only of the plaintiffs bought in, and paid his own money, and on his own account; therefore the damage was several, and this action in the name of all cannot be sustained. Two of the plaintiffs have sustained no damage.

A surrender or yielding by one joint tenant, or tenant in common, does not affect the right of the others. He cannot yield for the others.

The defendant objects that the office copy, purporting to be a copy of a contract between him and Jonathan Eastman, was incompetent evidence for any purpose whatever. It is not an instrument required to be on record. It was not proved that an original contract ever existed, nor the loss, nor any other fact entitling to the use of copies.

We farther contend, that the direction in relation to the rule of damages was erroneous. At common law the consideration paid was the measure of damages, in case of warranty of lands. It must also be the rule here, unless a different one has been established by judicial decisions, or is demanded by a difference in the circumstances and condition of the country. The common law rule has been adopted in many of the states. 4 *Kent's Com.* 476, *note a ;* 13 *Johns.* 50 ; 4 *Johns.* 1 ; 3 *Caines' R.* 111.

" The rule of the common law, and the one most prevalent in this country, appears to be moderate, just and safe." " The hardship of the doctrine that the seller must respond in every instance for the value of the land at the time of the eviction, and for useful improvements, consists in this, that no man could ever know the extent of his obligation. He could not venture to sell to a wealthy or enterprising purchaser, or in the vicinity of a growing town, without the chance of absolute ruin. The want of title, in cases of good faith, is usually a matter of mutual error, and the English rule would appear to be the most practicable, certain and benign in its application." 4 *Kent's Com.* 479.

If there were found an intentional misrepresentation, an action on the case would afford an adequate remedy in damages.

But in the present case it would be still more unjust to give the value of the land at the time of the eviction. The defendant sold merely his title, which was confessedly in doubt, and that known to the plaintiffs ; and he sold, not for the value of the land, but for the value of his title. All they have lost is his title ; and there can be no other fair

and consistent rule for damages, than the value set by the parties in the consideration paid.

The covenant is not broader than the grant. The grant is of Bedel's title only ; the covenant only attaches to that title.

The direction then should have been, (if the value is the rule of damages,) that the jury should find the value of that title, thus undertaken to be conveyed, and not the value of the land.

Again : The only eviction, if any, is on account of the purchase in of Tillotson's title by one of the plaintiffs. The damage then is the sum paid. When a grantee with warranty, being evicted by a paramount title, extinguishes such title, he is entitled to recover the amount paid, and a reasonable compensation for his trouble and expense in procuring such extinguishment. 10 *Pick. R.* 204, *Leffingwell* vs. *Elliot.* In the same case, 8 *Pick.* 457, the court say if the plaintiffs extinguished the paramount title for a nominal sum they can recover no more of the defendant.

If the court should hold that an eviction is proved by the sale of Tillotson's administrator, and that the value of the land at eviction is the rule of damages, still we contend that the direction of the court was wrong, inasmuch as the jury was directed to find the value of all the lands sold by Bedel to Eastman and Tillotson, when in fact only one half of that tract is found to have been sold by Tillotson's administrator.

*Wells*, for the plaintiffs. 1. There was such an assertion of claim to the property conveyed to Tillotson and Eastman, and yielding thereto, as warrants the plaintiffs in maintaining this suit.

It was apparent to the plaintiffs that the title conveyed by the defendant to Tillotson and Eastman, prior to his conveyance to them, must prevail, and no advantage could result to any of the parties, by resorting to a law-suit to settle a matter so apparent. The old rule of requiring the subse-

Loomis *v.* Bedel.

quent purchaser to hold on, till ousted by judgment of a court, went upon the presumption that a legal investigation was necessary, to determine in whom the legal estate was. So long as the real owner delays to enter upon the land, the right of the subsequent purchaser is suspended, and the honest purchaser might see his grantor spending the property he had paid him for the land, or going with all his effects beyond his reach, without the power to secure himself for the loss which sooner or later he must inevitably suffer. Such doctrine is at war with the principles of justice, and an attempt to base it upon the pretext that peradventure he may never be disturbed, is absurd. This matter has been discussed in two cases in Massachusetts. In *Hamilton* vs. *Cutts*, 4 *Mass. R.* 351, it is held, that in an action upon a covenant of warranty of land, the court will receive parol evidence of an ouster, and the plaintiff will recover, though he may have yielded voluntarily to a dispossession, provided the title to which he yielded be good, and paramount to his. He shall not be compelled to involve himself in a law-suit to defend against a title which he is satisfied must ultimately prevail. And in *Sprague* vs. *Baker*, 17 *Mass. R.* 589, it is determined that a claim to the premises by him who holds the paramount title, if yielded to, is sufficient. If Stephenson had been in possession of the land, and Tillotson had turned him out, I suppose the whole could then sue. Manifestly, his purchasing under the superior title is competent evidence of their yielding to the prior conveyance.

But it is said Eastman and his grantees asserted no claim to the land. To this there are two answers. In the first place, the territory conveyed being a wilderness, the strongest kind of evidence of claiming title is by conveying the same. And second, Eastman and Tillotson were tenants in common in the premises, claiming title under one and the same deed. When the plaintiffs yielded to the claim of Tillotson's representative, it was yielding to the paramount title, not to the sole individual claiming. A seizin of one

tenant in common is a seizin of all the other tenants. 17 *Mass. R.* 68 ; 14 *Mass.* 434 ; 18 *Mass.* 114.

2. The office copy of the instrument between Bedel and Jonathan Eastman was introduced to show that Bedel never owned but four twenty-fifths of the territory. If this is so, he conveyed to Eastman and Tillotson two thousand five hundred acres more than he ever owned. But the ruling of the court rendered this paper of no consequence, as they confined the plaintiff to the quantity conveyed to Eastman and Tillotson, and left it to the jury to find the value of that quantity at the time of eviction. But had the court by their ruling given the instrument the character the plaintiff designed, we contend it would have been legal. It was an admission under Bedel's own hand of the amount of his interest.

3. As to the rule of damages, *vide* 3 *Mass. R.* 523 ; 4 *Mass.* 108 ; *Ditto* 512 ; 17 *Mass.* 213 ; 2 *Greenl. R.* 266.

*Young*, on the same side, cited 5 *M. & S.* 374, *Nash & a.* vs. *Palmer ;* 2 *Saund.* 178 *a. n.* 8, 181 *a. n.* 10 ; 4 *Kent's Com.* 479 ; 1 *Saund.* 322 *a. n.* 2 ; *Roscoe's Evid.* 315 ; 6 *Conn. R.* 374 ; 4 *Ditto* 495, 510 ; 5 *Ditto* 497.

PARKER, C. J. The first objection to the maintenance of the action, upon which the defendant relies, is, that there is no sufficient evidence of an eviction or ouster of the plaintiffs from the lands described in the deed.

It seems to be generally settled, that in order to support an action upon a covenant of warranty, there must be something more than evidence of an outstanding paramount title. There must be an assertion of that title, and an ouster, or disturbance, by means of it. But no technical eviction by a judgment at law is necessary, nor is any resistance of the paramount title, legal or otherwise, required, to the maintenance of an action upon the covenant. It is well settled, that an entry under the paramount title amounts to a breach

Loomis *v.* Bedel.

of a covenant of warranty. And the grantee may upon demand surrender the land to a claimant having a good title, and resort to his action. 4 *Mass. R.* 349, *Hamilton* vs. *Cutts.* But in *Waldron* vs. *McCarty*, 3 *Johns. R.* 464, where there was an outstanding mortgage at the time of the conveyance to the plaintiff, and the premises were afterwards sold upon the mortgage, in pursuance of a decree of the court of chancery, and purchased by the plaintiff, who then brought his action upon the covenant of warranty in his deed, the court held that an entry and expulsion were necessary, and that there was no sufficient eviction or disturbance of the possession. In our opinion this is carrying the principle too far. If the claimant holding the paramount title should enter upon the land, and the grantee should thereupon yield up the possession, he would immediately have a right of action upon the covenant of warranty in his deed; and this right would not be barred or forfeited should he forthwith purchase the premises from the claimant, to whose superior title he had thus yielded the possession. He might on such purchase immediately reënter into the possession, and still maintain his action on the covenant. If, instead of this formality, he yields to the claims of a paramount title, and purchases without any actual entry of the claimant under it, where is the substantial difference? For all practical purposes his title under the grant, to which the covenant is attached, and under which he originally entered, is as much defeated in the one case as in the other. He is in fact dispossessed, so far as that title is concerned. He is still in possession, but he is so under another title, adverse and paramount to his former one; and his purchase is, therefore, equivalent to an entry of the claimant. It is an ouster by his consent, and a reëntry by himself, under the superior title, without going through with what would be at best a mere formality, where, conscious of the defect of the title under which he originally entered, he chooses to yield peaceably to the assertion of a better title, and to purchase it.

The grantor who conveys a defective title, with a covenant of warranty, has no reason to complain of this. No action can be maintained against him upon his covenant, in such case, except upon proof of the actual existence of a title superior to the one he conveyed, and which his grantee could not withstand at law; and if that proof is made out, with evidence that the title was asserted and yielded to, why should he be permitted to insist there must be a formal surrender of the possession, or actual entry, and that if this was not done there could be no breach of his covenant? How would his interests be benefitted by the going out, and going back again? The ouster, so far as holding under his title is concerned, is as effectual by a purchase without actually leaving the premises, as it could be by peaceably leaving them, or even by an expulsion through the operation of legal process. 17 *Mass. R.* 590, *Sprague* vs. *Baker.*

It appears in this case that Tillotson and Eastman held a deed, executed by the defendant prior to that which he made to the plaintiffs; and that Tillotson's administrator, having a license for the purpose, and claiming title in his intestate, under the defendant, by virtue of this deed, offered the land for sale. The title is one within the terms of the defendant's covenant. As against the defendant, and as against the plaintiffs, it was a valid title. *Bedel* vs. *Loomis, ante* 9. Stephenson, one of the plaintiffs, became a purchaser along with others. He is now in under Tillotson's title. He may maintain his possession, under that title, against all persons who cannot show a better. If the other plaintiffs are in possession, of which there is no evidence, they cannot be held to be in possession by virtue of the defendant's deed to them, as against the title of Stephenson and others under Tillotson. Their possession, as between themselves and Stephenson, and as between themselves and the defendant, may be held to remain under the deed of the defendant, so far as any interest is conveyed by this last deed beyond that conveyed by the deed of the defendant to

Tillotson and Eastman; and so far as Eastman's title is concerned, if there has been no ouster under that; but so far as the interest of Tillotson extended, Stephenson having yielded to that title by making the purchase, and he and the other purchasers under that title being lawfully in possession according to their title, he is dispossessed and ousted, thus far, under the deed of the defendant to the plaintiffs. And the other plaintiffs having yielded to that possession, as they could not but do, for Stephenson's possession under that title is an ouster of them thus far, may well join in the maintenance of this action.

The second objection seems to be well founded. There is no competent evidence of any ouster or disturbance of the plaintiffs by Simeon Eastman, or by any person claiming under him. The mere fact that Eastman has conveyed to a third person does not of itself affect the plaintiffs. They are strangers to this assertion of title, if it may so be called, having in no way yielded to it, or been prejudiced by it. It is a private matter between Eastman and his grantee.

Nor can the sale by Tillotson's administrator avail as a disturbance by Eastman or his grantee. The entry of one tenant in common is generally held to avail for the benefit of his co-tenant; and if in this case there had been an actual ouster by the entry of one tenant in common, without any qualification or limitation, such entry might have enured to the benefit of his co-tenant, and the result have been the same as if both had entered. But in this case the administrator of Tillotson cannot be considered as having entered or acted as a tenant in common, so that his act could avail for the benefit of a co-tenant. He does not appear to have made an actual entry. The ouster or disturbance results from his sale at auction under a license, the purchase by Stephenson and others, and the possession under that purchase. But this is of the undivided moiety conveyed in the deed of the defendant to Tillotson and Eastman. The administrator sold Tillotson's part. This is not an assertion of

title in Eastman, or any grantee of his. It no more appears that any title under Eastman will be asserted, than if this sale had not been made. If there is any, these proceedings cannot be given in evidence to sustain it.

The third and fourth objections have not been urged in the argument, and may well be abandoned. *Ante* 9.

The fifth exception must be sustained. If there was any thing in the agreement between the defendant and Jonathan Eastman which might avail as evidence in favor of the plaintiffs, measures should have been taken to produce the original, which is the best evidence of its contents. The plaintiffs derive no title through that agreement, and an office copy, therefore, is no better evidence than any other copy, even if it was a proper subject matter of record. A party is not entitled to put in evidence copies of every thing he may find upon the records. It is only when he claims title through deeds which have been recorded, that he is entitled to offer copies in evidence, without an effort first to produce the original. *Pollard* vs. *Melvin,* (10 *N. H. Rep.* 554.)

Upon the question of damages, it has been argued that the grant or quitclaim being only of the right, title and interest of the defendant, the covenant to warrant cannot be construed to extend beyond that, and that the damages therefore must be restrained to the value of the defendant's interest. But this construction would render the covenant nearly nugatory. The right, title and interest of the grantor would necessarily pass by the deed, and to that there could be no superior or paramount title. The covenant upon such a construction might, perhaps, avail to compel the heirs of the grantor to warrant against the dower of his widow; but even that might admit of question. Such a construction of the covenant is not warranted by the language of it, or by the apparent intention of the parties. The grantor engages to warrant and defend "the premises" against all lawful claims arising by, from or under him, and the term "premises" here refers to the lands described in the deed. He conveys

Loomis *v.* Bedel.

his right to the lands, and agrees to warrant and defend them against his own acts, leaving the grantees to judge for themselves what title, if any, he formerly had in them.

But the rule of damages does not appear to have been correctly stated. Where the grantee has purchased in, or removed, the paramount title, he can recover no greater sum than the amount paid, with compensation for his trouble and expenses. 8 *Pick. R.* 457, *Leffingwell* vs. *Elliot ;* 10 *Pick. R.* 204, *S. C.* A similar rule prevails in relation to the covenant against incumbrances, where the grantee has extinguished the incumbrance. 4 *Mass. R.* 627, *Prescott* vs. *Trueman ;* 4 *Conn. R.* 512, *Mitchell* vs. *Hazen ;* 7 *Johns. R.* 358, *Delavergne* vs. *Norris.* He cannot recover to that extent, if it exceed the value of the land. This matter has not been investigated. There is no evidence stated respecting the amount paid. The other plaintiffs, who join with Stephenson, cannot have a different rule of damages from that applicable to him. Whether the rule of damages on the covenant of warranty, where there has been no purchase of the paramount title, is the value of the land at the time of the ouster, or at the time of the purchase, may be left for further consideration whenever a case requires it.

*New trial granted.*