Drew *v.* Towle.

---

We entertain no doubt that the *certiorari* should be de-
nied and the

*Petition dismissed.*

---

DREW *v.* TOWLE.

A partial failure of consideration is a good defence to a promissory note, where
the amount to be deducted on that account is matter to be ascertained by mere
computation.

It is otherwise where such amount depends upon the ascertainment of unliqui-
dated damages.

Damages arising from the breach of the covenants in a deed of real estate, may
be set off, in cases where the amount of such damages may be ascertained by
mere computation.

But unliquidated damages cannot be set off in any case.

In a trustee process, if the trustee appears, he may be charged for the whole
debt and costs recovered by the creditor against the principal debtor, if he has
so much in his hands, after deducting the costs allowed him by the court,
though such amount exceeds the value the officer is directed to attach by the
trustee writ.

Upon a default he is chargeable only for the amount specified in the writ.

The trustee is discharged only for his own costs and the amount of the judg-
ment rendered against him. As the general rule he has no claim to be al-
lowed for interest paid on the execution against him, nor for the officer's fees
paid by him on the execution.

The pendency of a trustee suit is no cause to abate a writ by the principal
debtor against the trustee.

A trustee may take advantage of his payment of the debt, after being charged
as trustee, pending the action of the principal debtor, under the general issue,
and without a plea since the last continuance.

ASSUMPSIT, to recover the amount of three several promis-
sory notes of the defendant, to wit, 1st, one note for $200,
dated Nov. 30, 1847, signed by the defendant, and payable
to the plaintiff in one year, with interest. On this note was

indorsed as follows: 1848, May 27, received interest till the 1st day of April next. 1849, January 10, received $175.

2. One note for $200, dated Nov. 30, 1847, signed by the defendant, and payable to the plaintiff, in two years, with interest. On this note was indorsed as follows:— "1848, May 27, received interest till the first day of April next."

3. One note of the tenor following: "For value received I promise Mercy K. Drew, one hundred and ninety-nine dollars, in six months from the first day of April, 1848.

Amos Towle, Jr.

The declaration contained five counts. The first two upon the notes first above named; the third upon an account annexed to the writ, amounting to $100; the fourth for goods sold; and the fifth for $1000, money had and received. The writ was dated March 4, 1850, and was served upon the defendant March 29, 1850. At the trial the plaintiff produced the notes above named, and the signatures were admitted. The plaintiff also claimed to recover the amount of a certain award made by Josiah Dearborn and Asahel Dearborn, of matters submitted to them by the parties, the amount of which was $841,20; but offered no evidence in support of any claim except the said three notes.

The defendant offered to prove that the consideration of the first two of said notes arose as follows: On the 28th day of December, 1846, said parties, by a written agreement, under their hands and seals, referred sundry matters to the determination of Josiah Dearborn and Asahel Dearborn, under the penalty that, if either party should neglect to perform the award, he should pay to the other party the sum of $500, as liquidated damages; and that in said reference is the following agreement:—

"And it is further agreed that the said Josiah Dearborn and Asahel Dearborn shall appraise the twenty-nine acre piece of land, of which said Mercy K. Drew is seized and possessed, in said Eaton, on which she now lives, being

part of lot 121, east division of lots, in said Eaton; and also all the land said Mercy K. owns in lot numbered nineteen, in south division of lots, in said Eaton, being about one half of said lot. One half of the appraised value of said lot is to be deducted from the appraised sum. And the said Mercy is to give a good deed to said Towle, of said pieces of land, and said Towle, on his part, agrees to pay to said Mercy the sum said pieces of land shall hereafter be appraised at, after making a deduction as aforesaid—to pay one hundred dollars on the execution of a deed, said Mercy to him, said Towle, the remainder in one and two years." And that said arbitrators made their report in writing, the 30th day of November, A. D. 1847, and awarded that the said Towle should pay to said Drew the sum of $110,35 debt or damage, and $100,35 costs. And that in the same report they appraised said twenty-nine acres of land at $400, and the land in lot numbered nineteen, in the south division of lots, in said Eaton, mentioned in said agreement, being about sixty-two and a half acres, according to the admeasurement of one Clark, at $230. And that, on the same day, the said Mercy K. Drew executed and delivered her deed of said lots, with the usual covenants of warranty, to said Towle; which deed may be referred to by either party. And that, in part payment of said demand, on the same day, the defendant made and delivered to the plaintiff, the two notes first named; and that on the same day the defendant paid to the plaintiff the full amount of said $110,35 debt or damage, and the full amount of the said $100,35 costs, awarded by said arbitrators, and a part of the price of said two pieces of land, and that said two notes were given in payment of so much of the price of said two pieces of land, appraised as aforesaid, as then remained due.

On the 30th of November, 1850, the defendant filed a plea. of the general issue, with a set-off of an account amounting to $29,18, and a joint and several promissory note, signed by

Drew v. Towle.

Mercy K. Drew and one Josiah Drew, dated November 30, 1847, for $42,25, payable to Josiah Dearborn and Asahel Dearborn, or order, on demand with interest, and indorsed to the defendant. And in said set-off, described said piece of land, in said south division of lots (the sixty-two and a half acre piece) conveyed to the defendant, as aforesaid, by the plaintiff, and set forth the breach of the plaintiff's covenants in said deed, and claimed $500 damages for the breach of said covenants, to be allowed him by way of set-off.

1852, February 16, defendant paid into court, under a rule, $90 debt, and $35,58 costs, which was taken by the plaintiff's counsel, but not in full.

The defendant further offered to prove that said Mercy K. Drew had no title to said sixty-two and a half acre piece of land at the time she executed her said deed of the same to the defendant, nor was seized or possessed thereof, nor had any right to convey the same, or any part thereof; and to prove an outstanding title to, and an adverse possession of said piece of land for more than twenty years prior to the execution of the plaintiff's said deed; and claimed that the value of said piece of land, as fixed at the time of the execution of said deed, should be deducted from the amount of said notes, with interest on said value, from the date of the notes, and to have the same allowed by way of set-off, and to have his balance and costs.

The defendant also offered to prove that at the time of the execution of said agreement to refer, and of the execution of her said deed to the defendant, the plaintiff had no title, nor seizin or possession of the whole of said twenty-nine acres of land, as mentioned in said agreement and deed, but only of about ten and a half acres. That said piece of land is described in said deed and agreement as containing twenty-nine acres, and that in fact said deed embraces, by the monuments and boundaries given in said deed, only ten and a half acres; that no survey was made at the time of said appraisal; but the plaintiff fraudulently

represented to the arbitrators and the defendant at the time of the appraisal, that this piece of land, embraced within the monuments and boundaries given in the deed, contained twenty-nine acres; that the plaintiff fraudulently showed to the arbitrators and the defendant some valuable land under cultivation, with a house and an orchard upon it, which she fraudulently represented at the time, to the arbitrators and the defendant, was embraced in said boundaries, when in fact it was not so embraced; that the land really embraced within said boundaries was of a quality vastly inferior to the land shown the arbitrators and the defendant as aforesaid, and not embraced within said boundaries. That the arbitrators, relying upon her said representations, appraised said piece of land, as containing twenty-nine acres, and as containing said valuable land, orchard and house before mentioned. That the monuments and boundaries of this piece of land, as given in the deed, are the same boundaries and monuments which the said Mercy K. fraudulently represented to the arbitrators and the defendant embraced twenty-nine acres, and embraced some valuable land, orchard and house; and that it was not discovered by said Towle, nor said arbitrators, until long after said award was made, and said deed executed and delivered, and notes signed and delivered, that said piece of land did not contain twenty-nine acres, or that it did not embrace said valuable land, house and orchard.

And the defendant contended that he had a right to have, and claimed to have, the value of said balance of twenty-nine acres, to wit, eighteen and a half acres of land, at its fair value, or at the average value per acre fixed at the time, of the execution of said deed, deducted from the amount of said two notes, with interest from the date of the notes, and allowed against said two notes in this suit.

But the plaintiff objected to the introduction of evidence to show either the failure of title or lack of quantity in said land by way of set-off, or otherwise, in defence of this ac-

tion, and denied that the facts were as alleged by the defendant.

The defendant offered evidence to prove that an action was commenced in Carroll county, by one John Wood, against said Mercy K. Drew, and this defendant as trustee of said Drew, by writ dated January 4, 1850, which was served on this defendant January 5, 1850, was returnable at the May term of the court of common pleas for said county of Carroll, A. D. 1850. The command in said writ was to attach the money, goods, chattels, rights or credits of said Drew, in the hands and possession of said Towle, to the value of one hundred dollars. That said action was duly entered at said May term, and continued for notice to said Drew. That at the November term of said court, A. D. 1850, the parties appeared, and said action was continued to the May term of said court, 1851, when judgment was rendered against said Towle, as trustee of said Mercy K. Drew, for the sum of $119,84, and judgment for said trustee's costs, taxed at $10,50, upon the plea and disclosure of said trustee, setting forth and describing the notes specified in this suit, also setting forth the pendency of this suit, in the court of common pleas for the county of Rockingham; that upon said judgment for $119,84, execution issued against said Towle, May 29, 1851, was served upon said Towle, June 27, 1851, and was satisfied on the same day, by said Towle, by paying to the officer $119,84, and seventeen cents for said execution, and sixty cents interest on said judgment, and the officer's fees on said execution, taxed at $3,18, amounting in the whole to $123,79; and the defendant claimed to have the amount of said judgment, execution, and costs thereon, with lawful interest on said sums, allowed him in this suit.

The plaintiff objected to the admission of this evidence: 1, because the pendency of the trustee suit should have been pleaded in abatement; and because the judgment in the trustee suit cannot now be shown in defence to this action;

2, because the judgment against the trustee is erroneous, exceeding the $100 attached in the trustee's hands; 3, that judgment should not have been rendered for the costs of the trustee; and that neither said costs, nor the interest, nor the officer's fees, should be allowed in defence to this action.

The defendant also offered to prove that said joint and several note of said Mercy K. and Josiah Drew was signed by said Mercy and Josiah, and indorsed and delivered to him, and became his property prior to the commencement of this suit, and claimed to have the same allowed by way of set-off.

Whereupon the case was withdrawn from the jury, and it was agreed that judgment should be rendered for the plaintiff, or a new trial ordered, according to the opinion of the court upon the foregoing case.

*Small*, for the defendant.

The two first notes mentioned in the case are the notes in controversy. Their consideration consisted of two pieces of land, one of about twenty-nine acres and the other of about sixty-two and a half acres, conveyed by the plaintiff to the defendant, by deed, with the following covenants, to wit:

" And the said Mercy K. Drew and my heirs, executors and administrators, do hereby covenant, grant and agree to, and with the said Amos Towle, and his heirs and assigns, that, until the delivery hereof, I am the lawful owner of the said premises, and am seized and possessed thereof in my own right, in fee simple; and have full power and lawful authority to grant and convey the same in manner aforesaid; that the said premises are free and clear of all and every incumbrance whatsoever; and that I, my heirs, executors and administrators shall and will warrant and defend the same to the said Amos Towle, jr., and his heirs and assigns, against the lawful claims and demands of any person or persons whomsoever."

The two pieces of land were appraised separately, and a distinct value fixed upon each piece by the arbitrators.

I.   The evidence offered by the defendant would have shown that the plaintiff had no title, nor seizin, nor possession of the sixty-two and a half acre piece, nor right to convey the same, at the time the deed was executed; but that there had been an outstanding title, and an adverse possession of the same, for more than twenty years prior to the execution of said deed.   We contend this evidence constitutes a good defence to said two notes to the extent of the value of this piece of land, as fixed at the time of the conveyance.

This suit is between the original parties to the notes, and the general rule is, that the total or partial want or failure of consideration, may be insisted on as a bar between any of the immediate parties to the note.   Story on Prom. Notes, § 190.

If only a portion of the specific chattels, or other subject-matter of the consideration passes, the note is valid *pro tanto*, and void as to the residue.   *Woodbury*, J., in *Reed* v. *Prentiss*, 1 N. H. Rep. 176.

As to the sixty-two and a half acre piece, there was a *total* want of title, and the quantum of damages arising therefrom is susceptible of definite computation, and may, therefore, be shown in defence.   2 Greenl. Ev. § 199.

A want of title in the grantor, at the time of the conveyance, or a total failure of title subsequently, is a lawful defence to an action upon the notes given for the purchase money, notwithstanding the covenants in the deed.   *Frisbee* v. *Hoffnagle*, 11 Johns. 50; *Knapp* v. *Lee*, 3 Pick. 452; *Rumsey* v. *Sargent*, 1 Foster's Rep. 397; *Shepherd* v. *Temple*, 3 N. H. Rep. 455.

If there could be any objection to the evidence offered, under the general issue, there could be no objection to it under the set off in this case.   The most substantial reason given by *Mellen*, C. J., in *Lloyd* v. *Jewell*, 1 Greenl. 132, to allowing failure of title to be set up as a defence to the

notes given for the purchase money, is that the damages to be recovered on the covenants, are uncertain, being more or less than the consideration money, according to the value of the land at the time of the eviction.　But why is not this objection obviated by setting up the damages claimed on the breach of the covenants by way of set off?　The jury may, in that case, pass upon the value of the land, and settle the claim founded upon the notes and the breach of covenants in the same suit.　Such a demand is a proper subject of set off.　*Knapp* v. *Lee*, 3 Pick. 459.

But in this case there is a breach of the covenant of seizin, for which the measure of damages is the value of the land at the time of the conveyance, which may be determined by the consideration paid.　*Parker* v. *Brown*, 15 N. H. Rep. 188.

The defendant in this case has never had possession of this piece of land.

The only consequence of denying the defence set up here would be to authorize the plaintiff to recover, as a ground for the defendant to recover against her in an action of covenant on the deed, and the reasoning must be very strong and apparent which would authorize such a judgment. *Sedgwick*, J., in *Bliss* v. *Negus*, 8 Mass. Rep. 50.

II.　As to the twenty-nine acre piece of land, there was such gross fraud practised by the plaintiff upon the defendant, as entitles him to rescind the contract altogether, and he may give in evidence the fraud to defeat the action. *Reed* v. *Prentiss*, 1 N. H. Rep. 175 ; 2 Kent's Com. 476, 483, 486, 490, (4th Am. ed.;)　Chitty's Con. 678–685 and notes ; *Concord Bank* v. *Gregg*, 14 N. H. Rep. 331 ; *Hammatt* v. *Emerson*, 27 Maine Rep. 308 ; *Coburn* v. *Ware*, 30 Maine Rep. 202 ; *Rumsey* v. *Sargent*, 1 Foster's Rep. 397.

This piece of land was appraised as containing twenty-nine acres, in consequence of the fraudulent representations of the plaintiff, when, in fact, the deed only conveyed ten and a half acres.　The value of the ten and a half

acres may easily be ascertained; and there being a failure as to the remaining consideration, nothing further should be recovered. *Earl* v. *Page*, 6 N. H. Rep. 477.

An evident failure in quantity or quality of lands sold may be set up in defence of an action for the consideration money. 3 U. S. Dig. 419, § 59.

If a vendee was deceived in the purchase of land by misrepresentation, he may plead it or give it in evidence as a set off, against a bond given for the purchase money. 3 U. S. Dig. 419, § 61.

III. The amount of the trustee judgment should be allowed in this suit. Rev. Stat. ch. 208, § 38. The pendency of the trustee suit could not have been pleaded in abatement. *Wadleigh* v. *Pillsbury*, 14 N. H. Rep. 373; *Foster* v. *Jones*, 15 Mass. Rep. 185; *Perkins* v. *Parker*, 1 Mass. Rep. 117; 11 Mass. Rep. 488. The validity and propriety of the judgment in the trustee suit cannot be questioned in the present action. *Foster* v. *Jones*, 15 Mass. Rep. 186; *McAllister* v. *Brooks*, 22 Maine Rep. 80; *Thrasher* v. *Haines*, 2 N. H. Rep. 445, and cases cited.

It is but just and equitable that the costs on the execution, and interest on the sums paid, should be allowed in this suit.

*Hatch*, for the plaintiff.

I. The alleged breach of the covenants of the plaintiff's deed of warranty cannot be shown by way of set off. Mutual debts only can be set off; unliquidated damages are not within the statute. Rev. Stat. ch. 187, § 4; *Jarvis* v. *Rogers*, 15 Mass. 398; *Brown* v. *Cummings*, 2 Caines 33; *Crawford* v. *Sterling*, 4 Esp. N. P. Rep. 207; *Colvin* v. *Welch*, 1 Esp. N. P. Rep. 380, note; *Weigall* v. *Waters*, 6 T. R. 488; *Hepburn* v. *Hoog*, 6 Cowen 613; *Butts* v. *Collins*, 113 Wend. 139.

II. The alleged failure of title to the "sixty-two and a half" acre piece of land, for which, in part, the notes de-

clared on are said to have been given, cannot be shown as a defence to the note.

The price of that piece of land was 230 divided by 2, = $115. It is impossible to say in which of the notes it was included ; it could have formed but part of the consideration of either note.

It is well settled in this State that partial failure of consideration is no defence to a promissory note.

III. The alleged fraudulent misrepresentation of the title to a part of the twenty-nine acre lot, affects the consideration of the note but partially. This differs from the case of the other, but only in the allegation of fraud. This does not affect the principle stated above, either in reason or practice. The defendant must resort to his action on the warranty or on the case for deceit, as she may be advised. The rule was affirmed in the superior court, in Rockingham county, in the case of ———— v. *Swett*. The defendant purchased a gold watch of the plaintiff, and gave his note for it. It afterwards appeared that the plaintiff had defrauded the defendant, for the watch was only silver gilt. In an action on the note, it was holden that fraud could be shown in defence of the note.

In the present case, if it were shown that the title to both lots of land was entirely bad, it would not avail in defence of the notes. The plaintiff was in possession, and her deed gave to the defendant at least a color of title, and this color of title is a sufficient consideration to sustain the note now in suit.

Very great inconvenience, confusion and injustice would result, if in this suit were to be tried not only the matters contained in the declaration, but an action of covenant for the breach of the warranties in a deed, and an action on the case for deceit and misrepresentation. And it is doubtful whether the setting up of the defence attempted by the defendant, would operate to bar future actions on the deed, and for the alleged fraud.

IV.   The judgment in Carroll county, in favor of John Wood, against Towle, the defendant, as trustee of the plaintiff, is manifestly erroneous.   The command in the writ was to attach the money, &c., of this plaintiff, in Towle's hands, to the amount of $100 only.   The judgment against the trustee was for $119,84, and for the trustee's costs $10,50 more.

No lawful judgment could have been rendered in that suit against the trustee for more than $100; and the judgment is void by reason of the excess, and because the statute does not authorize such allowance of the trustees costs. Rev. Stat. ch. 208, § 35.

This plaintiff was neither party nor privy to the judgment against the trustee, had no opportunity to modify, correct or resist it, and so, as to her, it is void, and she may show the error, collaterally, without reversing the judgment.   *Vose* v. *Martin*, 4 Cush. 27, 31.   She cannot have her writ of error to reverse the judgment.   A writ of error would be entirely ineffectual for her, because the reversal of the judgment would merely restore to Towle, the defendant, the money Wood had unlawfully taken from him.   She can neither compel Wood to restore the money, nor Towle to receive it.   Bac. Ab. Error, B.; 9 Vin. Ab. Error, K.   1.   Towle may reverse the judgment, and it is his duty to do so.   If he may avail himself of this defence, he may afterwards reverse the judgment, and so have the money twice.   *Smith* v. *Saxton*, 6 Pick. 487.   The judgment may not be held void, only the proceedings under it.   *Leonard* v. *Bryant*, 11 Met. 370.

2.   The interest on the judgment and officer's fees on the execution can, upon no principle, be charged to the plaintiff, in this or any other suit.   It was the duty of Towle voluntarily to satisfy the judgment as soon as recovered against him.   All expense of levying the execution, or damage or interest for delay, was caused by his own default, and is

chargeable upon him alone. Nothing in the statute imposes such a burden upon the plaintiff.

3. The defendant has not properly availed himself of the defence, which might have resulted from the proceedings against him as the plaintiff's trustee. He might have pleaded the pendency of the trustee process in abatement, (*Hazelton* v. *Monroe,* sup. court, Rock. co., Dec. term, 1849,) or he should have pleaded the proceedings in that suit, which have been had since the pendency of this action, *puis darrien continuance.* The general issue was pleaded November 30, 1850; the judgment now set up was rendered May, 1851. *Pemegewasset Bank* v. *Brackett,* 4 N. H. Rep. 557, in which case the law is fully and satisfactorily discussed by *Richardson,* C. J.

The statute (Rev. Stat. ch. 208, § 38,) applies only to cases where the trustee suit has terminated before the commencement of the suit, for the fund taken from the trustee's hands.

BELL, J. Upon the question of failure of consideration as a defence to a promissory note, the rule generally adopted elsewhere is well laid down in Bayley on Bills 393. " A total failure of consideration is where it can be insisted on as a total bar; inadequacy or a partial failure, a bar *pro tanto* only. If a bill or note is given, either wholly or as to a specific part, as the consideration of a special contract, and that contract either fails *in toto,* or is *in toto* rescinded, it will be an answer to an action on the bill or note, either wholly or *pro tanto,* if the plaintiff stands in a position which makes him liable to such a defence. But the partial failure of consideration will constitute no defence, if the quantum to be deducted on that account is matter not of definite computation, but of unliquidated damages, unless the contract was rescinded on that ground." ﹨

The same rule is laid down substantially in 1 Saund. Pl. & Ev. 303; 1 Steph. N. P. 929; 1 Leigh's N. P. 474, and

in Story on Prom. Notes, § 187; 2 Greenl. Ev. § 199, and many authorities cited.

The reported cases in New Hampshire show that the rule thus stated has been recognized and adopted here.

In *Copp* v. *Sawyer*, 6 N. H. Rep. 386, it was held that a want of consideration is a good defence to a promissory note, in a suit between the original parties to it; and the same principle is stated in *Reed* v. *Prentiss*, 1 N. H. Rep. 174.

In the last case, it is said by *Woodbury*, J., that mere failure of consideration is no defence to an action on a promissory note. But the case was decided upon the point that there was no failure of consideration, inasmuch as the whole article, which was the consideration of the note, passed by a valid title, to the purchaser, and it was not shown that there was any warranty of the quality or deceit practised in the sale.

In *Earle* v. *Page*, 6 N. H. Rep. 477, it was held that where a note has been partially paid, a failure of consideration to a greater amount than the balance due, was a bar to the action.

In *Haseltine* v. *Guild*, 11 N. H. Rep. 390, it was held that a promissory note for a certain sum given to indemnify a surety in a probate bond, and to enable him to secure himself by attachment was good to the amount actually paid upon the bond by the surety, at the time of the judgment, and that for the balance the consideration must be held to have failed. This case clearly recognizes the principle that a partial failure of consideration is, in some cases, a defence *pro tanto* to a promissory note.

In *Chase* v. *Weston*, 12 N. H. Rep. 413, it is said by *Upham*, J., that on the ground of authority, a mere partial failure of consideration of a note, arising from a breach of covenants of warranty in a conveyance of land, will not constitute a defence; but the point was not decided, because the maker of the note had assigned over the covenants.

---

In *Fletcher* v. *Chase*, Hillsborough, 1843, the same point was decided; and in *Sanborn* v. *Osgood*, Grafton, 1843, it was held that a partial failure of consideration, arising from the fraud of the seller, is no defence to a promissory note, unless the entire contract is rescinded.

In *Rumsey* v. *Sargent*, 1 Foster's Rep. 397, it was held that where the seller agreed to refund the price of an article sold, if it did not give satisfaction, the failure of the article to answer its purpose, was a good defence to a note given for the price of it.

We have seen no report of the case of ——— v. *Swett*, cited by the plaintiff's counsel, but, as stated by him, it seems consistent with the other decisions cited. It may be fairly inferred that the defendant, having chosen not to avoid nor rescind the contract of sale, but to retain the property, notwithstanding its defects, had reduced his claim from a total failure of consideration to a partial failure, in which case the amount of the failure must depend upon the ascertainment of unliquidated damages.

In the present case, as to the tract of sixty-two and a half acres, the failure of consideration is total, and the amount readily ascertained by mere computation; it, therefore, falls within the principle of *Haseltine* v. *Guild.* As to the other tract, the case is one of partial failure only, and the amount entirely unliquidated; and it is, therefore, no defence, within the principle of *Chase* v. *Weston*, *Fletcher* v. *Chase*, and *Sanborn* v. *Osgood*, and the defendant must seek his indemnity by his action upon his covenants.

The same test, we think, will apply to the question whether damages for the breach of the covenants in a deed, may be set off in an action of assumpsit for the consideration. Where the failure of title is total, and the remedy is to be sought on the breach of the covenant of seizin, the rule of damages is definite, to wit: the value of the property, as shown by the consideration paid and the interest. *Parker* v. *Brown*, 15 N. H. Rep. 176, and they may be ascertained

by numerical calculation alone, and may, therefore, properly be allowed as a set off. In actions on the covenant of warranty, the same rule of damages is adopted here, (*Wilson* v. *Wilson*, Coos, Dec. 1851,) and the same principle of set off may apply, and, in many cases, a similar principle will be applicable on the covenant against incumbrances, where the incumbrance has been removed. *Loomis* v. *Bedel*, 11 N. H. Rep. 74.

Where the damages upon any breach of covenant are uncertain and unliquidated, they cannot, we think, form the subject of a set off. The language of the Revised Statutes differs from that of the English statute of 8 Geo. II. ch. 24, § 4. The latter says, " whenever there are mutual debts between the plaintiff and defendant, &c., one debt may be set off against the other." Section 6, chapter 187 of the Revised Statutes provides that " if there are mutual debts or demands between the plaintiff and defendant, at the time of the commencement of the plaintiff's action, one debt or demand may be set off against the other."[A]

The first provincial statute of 1765 followed the terms of the 8 Geo. II, Prov. Stat. 1771, 195. The change of phrase was made in the revision of 1791, Stat. 1815, 172. So far as I have found, there is no reported decision relative to the construction and effect of our statute.

Under the English statute, " if the claim of either party consists of uncertain or unliquidated damages, a set off is not allowed." 1 Leigh's N. P. 153; B. N. P. 161; Montague on Set Off 13. But an unliquidated demand, capable of being reduced to a certainty by a simple calculation, may be set off. Leigh's N. P. 160; *Gibson* v. *Bell*, 1 Bing. N. C. 743; *Rose* v. *Simms*, 1 B. & A. 526; 2 Saund. Pl. & Ev. 790; 1 Banv. Inst. 327.

In *Hepburn* v. *Hoag*, 6 Cowen 613, the question arose as to the effect of the word " demands," in the New York statute, relative to set-offs, and it was decided that the in-

sertion of this word did not change the law so as to give a party the benefit of uncertain damages by way of set off.

Such, we think, has been the practical construction of our own statute, and that debts, properly speaking, or demands capable of liquidation by mere computation, and no others, have ever been allowed as the subjects of set off.

The damages arising upon the covenants relative to the sixty-two and a half acres may be set off; but those which relate to the smaller tract being uncertain, and necessarily to be assessed by a jury, can only be recovered in a distinct action.

III. By the Revised Statutes, ch. 193, § 15, a form of process is prescribed in trustee cases. By it the sheriff is required to attach the goods, &c. of the debtor, in the hands, &c. of the trustee, to the value of —— dollars, and summon the trustee to appear, &c., and show cause why execution should not issue against him for the damages, which may be recovered by the plaintiff against the principal defendant.

The question is raised, in this case, whether the plaintiff can recover more than the amount required by the writ to be attached, if it appears that the trustee has more in his hands.

By section 5 of chapter 221, " if the trustee makes default, the charge of having in his hands money, &c. of the principal defendant to the amount alleged in the process, shall be taken to be true, and judgment shall be rendered against the trustee, not exceeding the amount alleged in such process."

By section 7 every person, summoned as trustee as aforesaid, may be put to answer interrogatories as to his liability as such trustee, &c.

By section 8 every such trustee, having in his possession any money, &c. of the defendant, at the time of the service of such writ upon him, or at any time after such ser-

vice, and before his disclosure, shall be adjudged trustee therefor.

These provisions appear to us to show that although upon a default, the trustee shall be charged only for the amount alleged in the process to be in his hands; yet, upon disclosure or trial by jury, if it appears that he has property of the principal defendant in his possession, whether it was attached on the process or not, he shall be charged for it.

In that case, as between these parties, the amount alleged in the process is immaterial. Being thus chargeable for all that he has in his possession, the court may order a judgment for the trustee for his costs, to be retained out of the property in his hands, and for the creditor for the amount of his judgment against the principal debtor, whether debt or costs, not exceeding the surplus, after deducting the trustee's costs from the amount in his possession.

By section 35, "in all cases where the trustee has not been guilty of fraud or unreasonable delay, he shall be entitled to his costs, and the court may order the same to be deducted from the amount for which said trustee shall be adjudged chargeable, or may render judgment and issue execution therefor," &c.

In this case, the trustee appeared, and the judgment was not probably rendered on a default, and if not, the judgment seems to be regular, notwithstanding the exception taken.

Probably the view of the defendant may be correct, that as she was not a party to the proceeding against the trustee, had no right to be heard, and had no remedy by error to reverse or correct the proceedings, she has the right to avail herself of any defect of the judgment collaterally. *Puffer* v. *Graves*, 6 Foster's Rep. 256. Such judgment, though conclusive upon parties, is not so as to strangers or third persons. *Thrasher* v. *Haines*, 2 N. H. Rep. 444.

As to the question of interest on the execution against

the trustee, and the officer's fees, as a general rule, that is a matter between the creditor and the trustee, with which the debtor has nothing to do. The trustee is discharged for the amount of the judgment against him, so far as the debtor is concerned, and no more. This seems to be made clear by section 30, which provides that when any person shall be adjudged a trustee of any debtor as aforesaid, except where it is otherwise specially provided, judgment shall be rendered and execution issue against such trustee, his own goods and estate therefor, &c., in the same manner as if such writ were brought against him personally.

In cases where a special provision is made, as in sections 10 to 14, a different rule may be applicable, but that question does not arise here.

In *Wadleigh* v. *Pillsbury*, 14 N. H. Rep. 373, it was decided that the pendency of an action against a debtor, as trustee of the creditor, is not a good plea in abatement to an action by the creditor. And by section 38 any trustee from whose possession any money, &c., shall be taken by the trustee process, may, if sued therefor, plead the general issue, and give the special matter in evidence under it. It was not, therefore, necessary to plead, in this case, any plea *puis darrien continuance*.

As, then, a part of the evidence offered ought to have been received, the case must be sent to a new trial.